| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| Central District of California |
| Case number *(If known):* _____ Chapter 15 |

☐ Check if this is an
amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

| 1. | **Debtor's name** | BIG RIG TRAILERS & LEASING INC. |
| --- | --- | --- |

**2. Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)  ___ ___  –  ___ ___ ___ ___ ___ ___ ___

☑ Other  776057267RC0001 . Describe identifier  Business Number .

**For individual debtors:**

☐ Social Security number:  xxx – xx– ___ ___ ___ ___

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ___ ___ ___ ___

☐ Other _____ . Describe identifier _____ .

| 3. | **Name of foreign representative(s)** | Grant Thornton Limited, solely as receiver of Debtor |
| --- | --- | --- |
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | Royal Bank of Canada vs. Big Rig Trailers & Leasing, Inc., Sup. Ct. ⟨of British Columbia, Vancouver Registry, Case No. S244137⟩ |

**5. Nature of the foreign proceeding**

*Check one:*

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6. Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☑ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

**7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)
☑ Yes

Debtor   BIG RIG TRAILERS & LEASING INC.                          Case number (*if known*)_____
         Name

---

**8.   Others entitled to notice**   Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)   all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)   all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9.   Addresses**

**Country where the debtor has the center of its main interests:**

Canada

**Debtor's registered office:**

2105 Carpenter St.
Number      Street

_____
P.O. Box

Abbotsford, Brit. Columbia   | V2T 6L9 |
City          State/Province/Region   ZIP/Postal Code

Canada
Country

**Individual debtor's habitual residence:**

_____
Number      Street

_____
P.O. Box

_____
City      State/Province/Region   ZIP/Postal Code

_____
Country

**Address of foreign representative(s):**

333 Seymour St., Suite 1600
Number      Street

_____
P.O. Box

Vancouver, B.C.   | VB6 04A |
City      State/Province/Region   ZIP/Postal Code

Canada
Country

---

**10.   Debtor's website** (URL)   bigrigtrailers.com and bigrigcanada.com

---

**11.   Type of debtor**   *Check one:*

☑ Non-individual (*check one*):

☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

☐ Partnership

☐ Other.  Specify: _____

☐ Individual

---

| Debtor | BIG RIG TRAILERS & LEASING INC. | Case number (if known) _____ |
|---|---|---|
| | Name | |

---

**12. Why is venue proper in *this district*?**

Check one:

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____.

---

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✘ Attached_____     Mark Wentzell, Grant Thornton Limited,
   Signature of foreign representative              Printed name    solely as receiver of Debtor

Executed on   09/06/2024_____
              MM  / DD / YYYY

✘ _____            _____
   Signature of foreign representative              Printed name

Executed on   _____
              MM  / DD / YYYY

---

**14. Signature of attorney**

✘ /S/ Jess R. Bressi_____     Date   09/06/2024_____
   Signature of Attorney for foreign representative           MM   / DD / YYYY

Jess R. Bressi_____
Printed name

Dentons US LLP_____
Firm name

4675 MacArthur Court, Suite 1250_____
Number          Street

Newport Beach_____   CA         92660_____
City                                         State       ZIP Code

(949) 241-8967_____           Jess.Bressi@Dentons.com_____
Contact phone                                Email address

_____              _____
Bar number                                   State

---

| Print | Save As... | Add Attachment | Reset |

| Debtor | BIG RIG TRAILERS & LEASING INC. | Case number *(if known)* |
|---|---|---|
| | Name | |

**12. Why is venue proper in *this district?***

*Check one:*

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✖ _____    Mark Wentzel, Grant Thornton Limited,
Signature of foreign representative      Printed name    solely as receiver of Debtor

Executed on    09/06/2024
                MM  / DD / YYYY

✖ _____    _____
Signature of foreign representative      Printed name

Executed on    _____
                MM  / DD / YYYY

**14. Signature of attorney**

✖ _____    Date    09/06/2024
Signature of Attorney for foreign representative        MM  / DD / YYYY

Jess R. Bressi
Printed name

Dentons US LLP
Firm name

4675 MacArthur Court, Suite 1250
Number        Street

Newport Beach                                CA          92660
City                                        State       ZIP Code

(949) 241-8967                              Jess.Bressi@Dentons.com
Contact phone                               Email address

_____            _____
Bar number                                  State

1  JESS R. BRESSI (SBN 110264)
   DENTONS US LLP
2  4675 MacArthur Court, Suite 1250
3  Newport Beach, CA 92660
   Tel: (949) 241-8967
4  Email: jess.bressi@dentons.com

5  LYNN P. HARRISON III (Pro Hac Vice to be filed)
   DENTONS US LLP
6  1221 Avenue of the Americas
7  New York, NY 10020
   Tel: (212) 768-6700
8  Email: lynn.harrisoniii@dentons.com

9

10  Counsel for Foreign Representative

11          **UNITED STATES BANKRUPTCY COURT**

12      **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

13  In re:                              Chapter 15 Case

14
                                        **DECLARATIONS OF FOREIGN**
15                                      **REPRESENTATIVE PURSUANT TO SECTION**
                                        **1515(c) OF THE BANKRUPTCY CODE AND**
16  BIG RIG TRAILERS & LEASING INC.,    **F.R.Bk.P RULE 1007(a)(4)**

17      Debtor In Foreign Proceeding.

18

19

20

21          I, Mark Wentzell, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

22  under the laws of the United States of America, as follows:

23          1.      I am a Senior Vice President of Grant Thornton Limited ("GTL"). GTL is the court-

24  appointed receiver and manager of the assets, undertakings, and properties of the above-captioned

25  debtor (the "Debtor"). GTL is the duly-authorized foreign representative (the "Foreign

26  Representative") of the Debtor in pending Canadian proceedings (the "Canadian Proceeding") under

27  the Canadian *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "BIA"), pending

28

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

1    before the Supreme Court of British Columbia (Vancouver Registry) in Vancouver, Canada, as Case

2    No. S-244137 (the "Canadian Court").

3         2.    Acting on behalf of GTL as receiver, I have investigated the business and affairs of

4    the Debtor to the best of my ability since my engagement on this matter and make this Declaration

5    based on that investigation. All facts set forth in this Declaration are based upon my personal

6    knowledge; my review of relevant documents; information provided to me by employees of GTL

7    working under my direction or supervision; my discussions with current or former representatives

8    and/or agents of the Debtor; and/or my opinions based upon my experience concerning the Debtor's

9    operations and financial condition. If called to testify, I could and would testify competently as

10   stated herein. As to matters stated on information and belief, I believe them to be true.

11        3.    I am the person employed by GTL primarily responsible for and in charge of this

12   engagement including the management, supervision, and control of the Canadian Proceeding and

13   the receivership created by orders entered by the Canadian Court.

14        4.    I respectfully submit this statement, as required by section 1515(c) of title 11 of the

15   United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in support of the *Official

16   Form 401 Petition* and the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II)*

17   *Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the*

18   *Bankruptcy Code and the Chapter 15 Petition for Recognition of a Foreign Proceeding* for the

19   Debtor,  each filed contemporaneously herewith seeking recognition by this Court of the Canadian

20   Proceeding as a foreign main proceeding for the Debtor.

21        5.    The last four digits of Debtor's Canadian business number are 7267.

22        6.    Pursuant to the requirements of section 1515(c) of the Bankruptcy Code, to the best

23   of my knowledge, the Canadian Proceeding is the only known pending "foreign proceedings" with

24   respect to the Debtor as that term is defined in section 101(23) of the Bankruptcy Code.

25   / / /

26   / / /

27

28

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

2

DECL. OF WENTZELL

1    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United

2    States of America that the foregoing is true and correct to the best of my knowledge, information,

3    and belief.

4    Executed this 5th day of September, 2024 at Vancouver, Canada.

5

6

7                                                                    Mark Wentzell

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

US ACTIVE\127706349\V-1

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

**DISCLOSURE PURSUANT TO BANKRUPTCY RULE 1007(a)(4) OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE**

I, Mark Wentzell, solely in my capacity as a Senior Vice President of the duly-appointed and authorized foreign representative of Debtor, Grant Thornton Limited, as Receiver of the Debtor (the "Foreign Representative") of the above-captioned debtor in a pending Canadian proceeding (the "Canadian Proceeding") under the Canadian *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "BIA"), pending before the Supreme Court of British Columbia (Vancouver Registry) in Vancouver, Canada, as Case No. S-244137 (the "Canadian Court") hereby files this disclosure pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and respectfully sets forth as follows:

**A.    Receiver/Administrators in Foreign Proceeding Concerning the Debtor**

1.    Grant Thornton Limited as Receiver is the duly-authorized foreign representative of the Debtor in the Canadian Proceeding. The Foreign Representative's address is: Grant Thornton Limited, 333 Seymour Street, Suite 1600, Vancouver, British Columbia, Canada V6B 0A4.

2.    The last four digits of Debtor's Canadian business number are 7267.

**B.    Entities Against Whom Provisional Relief is Sought Pursuant to 11 U.S.C. §
1519**

3.    Pursuant to Bankruptcy Rule 1007(a)(4), a list of all parties against whom provisional relief is being sought under Section 1519 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, is attached hereto as Schedule 1.

**C.    All Parties to Litigation Pending in the United States in which the Debtor is a
Party at the Time of Filing of the Petition**

4.    No litigation pending in the United States involving the Debtor is known to exist at this time.

The Foreign Representative reserves the right to modify and/or supplement Schedule 1.

US_ACTIVE\127706349\V-1

DECL. OF WENTZELL

1    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United

2  States of America that the foregoing is true and correct to the best of my knowledge, information,

3  and belief.

4    Executed this 5th day of September, 2024 at Vancouver, Canada.

Mark Wentzell

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

**SCHEDULE 1 – PARTIES AGAINST WHOM PROVISIONAL RELIEF IS SOUGHT[1]**

1. Kal Freight, Inc., 10156 Live Oak Ave., Fontana, CA 92335 and 600 109th Street, Suite B, Arlington, TX 76011

2. Kal Trailers and Leasing Inc., 10156 Live Oak Ave., Fontana, CA 92335

3. Kal Partz, Inc., 10156 Live Oak Ave., Fontana, CA 92335

4. Kvl Tires Inc. (formerly Kal Tires Inc.), 10156 Live Oak Ave., Fontana, CA 92335

5. Kal Aviation LLC, c/o Mandeep S. Rupal, Attorney at Law, Rupal Law, 740 Green River Road, Suite 209, Corona, CA 92878

6. Kalvinder Singh, 10192 Jacaranda ct., Rancho Cucamonga, CA 91737 and c/o Mandeep S. Rupal, Attorney at Law, Rupal Law, 740 Green River Road, Suite 209, Corona, CA 92878

7. Sukhvinder Singh, c/o Mandeep S. Rupal, Attorney at Law, Rupal Law
4740 Green River Road, Suite 209, Corona, CA 92878

8. Amit Jeed, c/o Mandeep S. Rupal, Attorney at Law, Rupal Law
4740 Green River Road, Suite 209, Corona, CA 92878

9. Deepanshu Agarwal, c/o Mandeep S. Rupal, Attorney at Law, Rupal Law
4740 Green River Road, Suite 209, Corona, CA 92878

10. 1000798196 Ontario Inc., 520 Grey Street, Unit 36, Brantford, Ontario, N3S0K1, Canada and 5076 Sagewood Dr., Rancho Cucamonga, CA 91739

11. Diamond X-Press LLC, 5723 Dividend Road, Indianapolis, IN 46241 and 5077 Gunston Lane, Plainfield, IN 46168

12. Harpreet Sandhu, c/o Rod Pacheco, Pacheco Neach PC, Two Park Plaza, Suite 1000, Irvine, CA 92614

13. Sikander Singh Randhawa, 5076 Sagewood Dr., Rancho Cucamonga, CA 91739 and c/o Rod Pacheco, Pacheco Neach PC, Two Park Plaza, Suite 1000, Irvine, CA 92614 and

14. Dharminder Singh Randhawa, c/o Rod Pacheco, Pacheco Neach PC, Two Park Plaza, Suite 1000, Irvine, CA 92614

15. Adarsh Bajwa, c/o Rod Pacheco, Pacheco Neach PC, Two Park Plaza, Suite 1000, Irvine, CA 92614

---

[1] The Foreign Representative reserves the right to add, subtract or otherwise modify the above list as the facts and law may develop.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

US_ACTIVE\127706349\V-1

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Jess R. Bressi (SBN 110264)<br>DENTONS US LLP<br>4675 MacArthur Court, Suite 1250<br>Newport Beach, California 92660-8803<br>Email: Jess.Bressi@Dentons.com<br>Phone: 949.241.8967 | |

☒ *Attorney for:* Foreign Representative

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION** ▼

| In re:<br>BIG RIG TRAILERS & LEASING INC. | CASE NO.: |
|---|---|
| | ADVERSARY NO.: |
| Debtor(s). | CHAPTER: 15 ▼ |
| | **CORPORATE OWNERSHIP STATEMENT<br>PURSUANT TO  FRBP 1007(a)(1)<br>and 7007.1, and LBR 1007-4** |
| Plaintiff(s), | |
| Defendant(s). | [No hearing] |

*Pursuant to FRBP 1007(a)(1) and 7007.1, and LBR 1007-4, any corporation, other than a governmental unit, that is a debtor in a voluntary case or a party to an adversary proceeding or a contested matter shall file this Statement identifying all its parent corporations and listing any publicly held company, other than a governmental unit, that directly or indirectly own 10% or more of any class of the corporation's equity interest, or state that there are no entities to report.   This Corporate Ownership Statement must be filed with the initial pleading filed by a corporate entity in a case or adversary proceeding.   A supplemental statement must promptly be filed upon any change in circumstances that renders this Corporate Ownership Statement inaccurate.*

I, *(Printed name of attorney or declarant)* Jess R. Bressi _____, the undersigned in the above-captioned case, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**[Check the appropriate boxes and, if applicable, provide the required information.]**

1.  I have personal knowledge of the matters set forth in this Statement because:

☐ I am the president or other officer or an authorized agent of the Debtor corporation

☐ I am a party to an adversary proceeding

☐ I am a party to a contested matter

☒ I am the attorney for the Debtor corporation's Foreign Representative

2.a. ☒ The following entities, other than the Debtor or a governmental unit, directly or indirectly own 10% or more of any class of the corporation's(s') equity interests:

Kal Freight, Inc., organized as a California corp. and merged into a Texas corp. of the same name in 2020 is believed to own 10% or more of the stock, possibly along with Messrs. Kalvinder Singh & Sukhvinder Singh. Foreign Representative reserves the right to amend this statement as the facts may develop.

[For additional names, attach an addendum to this form.]

b. ☐ There are no entities that directly or indirectly own 10% or more of any class of the corporation's equity interest.

Date:  09/06/2024

By:  /S/ Jess R. Bressi
Signature of Debtor, or attorney for Debtor

Grant Thornton Limited, as Receiver and Foreign Representative

Name:  Jess R. Bressi
Printed name of Debtor, or attorney for Debtor

Grant Thornton Limited, as Receiver and Foreign Representative

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 2                    **F 1007-4.CORP.OWNERSHIP.STMT**

# EXHIBIT 1



SUPREME
OF BRITISH
VANCOUVER

JUN 7 1 2024

ENTERED

No. 3 - 2 44 1 37

Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN

ROYAL BANK OF CANADA

PETITIONER

AND

BIG RIG TRAILERS & LEASING INC., BIG RIG
TIRES & SERVICES INC., and BIG RIG PARTZ INC.

RESPONDENTS

<u>ORDER MADE AFTER APPLICATION</u>

| | |
|---|---|
| BEFORE THE HONOURABLE | ) |
| | ) |
| MR. JUSTICE MASUHARA | )  FRIDAY, JUNE 21, 2024 |
| | ) |

**ON THE WITHOUT NOTICE APPLICATION** of Royal Bank of Canada ("**RBC**"), for an Order pursuant to Section 47(1) of the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "**BIA**"), appointing Grant Thornton Limited ("**GT**") as Interim Receiver (in such capacity, the "**Interim Receiver**") without security, of all of the assets, undertakings and property of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. (collectively, the "**Debtors**") acquired for, or used in relation to a business carried on by the Debtors, coming on for hearing this day at Vancouver, British Columbia; AND UPON this Honourable Court being satisfied that it is appropriate in the circumstances to grant this Order without notice to the Respondents or any other party;

**AND ON READING** the First Affidavit of Tro DerBedrossian sworn June 17, 2024 and the consent of GT to act as the Interim Receiver; AND ON HEARING William E.J. Skelly, Counsel for the Petitioner, RBC, and other counsel as listed on Schedule "A" hereto;

**THIS COURT ORDERS AND DECLARES THAT:**

**APPOINTMENT**

1.  Pursuant to Section 47(1) of the BIA, GT is appointed Interim Receiver, without security, of all of the assets, undertakings and properties of the Debtors acquired for, or used in relation to a business carried on by the Debtors, including all proceeds (the "**Property**").

2. The appointment of the Interim Receiver under paragraph 2 hereof, and the powers and obligations of the Interim Receiver pursuant to this Order, shall terminate upon the earliest of:

    (a) the taking of possession of the Property by a receiver, within the meaning of subsection 243(2) of the BIA, or by a trustee in bankruptcy; and

    (b) 35 days after the date of this Order, being 11:59 p.m. (PST) on July 26, 2024, unless renewed by further Order of this Court prior to the expiry date.

## INTERIM RECEIVER'S POWERS

3. The Interim Receiver is empowered and authorized, but not obligated, to act at once in respect of the Property, without in any way limiting the generality of the foregoing, the Interim Receiver is expressly empowered and authorized to do any of the following where the Interim Receiver considers it necessary or desirable:

    (a) to take possession of and exercise control over the Property and any and all receipts and disbursements arising out of or from the Property;

    (b) to receive, preserve and protect the Property, or any part or parts thereof, including, but not limited to, changing locks and security codes, relocation of the Property, engaging independent security personnel, taking physical inventories, placing insurance coverage;

    (c) to manage, operate and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, or cease to perform any contracts of the Debtors;

    (d) to retain or hire any employees on behalf of the Debtors for any period of time on substantially the same terms and conditions as those existing between such employees and the Debtors, if applicable, prior to the appointment of the Interim Receiver;

    (e) to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Interim Receiver's powers and duties, including, without limitation, those conferred by this Order;

    (f) to report to, meet with and discuss with such affected Persons (as defined below) as the Interim Receiver considers appropriate on all matters relating to the Property and the Interim Receivership, and to share information, subject to confidentiality terms as the Interim Receiver considers appropriate;

    (g) to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting these amounts, including, without limitation, enforcement of any security held by the Debtors;

    (h) to settle, extend or compromise any indebtedness owing to the Debtors;

- 2 -

2.    The appointment of the Interim Receiver under paragraph 2 hereof, and the powers and obligations of the Interim Receiver pursuant to this Order, shall terminate upon the earliest of:

(a)    the taking of possession of the Property by a receiver, within the meaning of subsection 243(2) of the BIA, or by a trustee in bankruptcy; and

(b)    35 days after the date of this Order, being 11:59 p.m. (PST) on July 26, 2024, unless renewed by further Order of this Court prior to the expiry date.

## INTERIM RECEIVER'S POWERS

3.    The Interim Receiver is empowered and authorized, but not obligated, to act at once in respect of the Property, without in any way limiting the generality of the foregoing, the Interim Receiver is expressly empowered and authorized to do any of the following where the Interim Receiver considers it necessary or desirable:

(a)    to take possession of and exercise control over the Property and any and all receipts and disbursements arising out of or from the Property;

(b)    to receive, preserve and protect the Property, or any part or parts thereof, including, but not limited to, changing locks and security codes, relocation of the Property, engaging independent security personnel, taking physical inventories, placing insurance coverage;

(c)    to manage, operate and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, or cease to perform any contracts of the Debtors;

(d)    to retain or hire any employees on behalf of the Debtors for any period of time on substantially the same terms and conditions as those existing between such employees and the Debtors, if applicable, prior to the appointment of the Interim Receiver;

(e)    to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Interim Receiver's powers and duties, including, without limitation, those conferred by this Order;

(f)    to report to, meet with and discuss with such affected Persons (as defined below) as the Interim Receiver considers appropriate on all matters relating to the Property and the Interim Receivership, and to share information, subject to confidentiality terms as the Interim Receiver considers appropriate;

(g)    to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting these amounts, including, without limitation, enforcement of any security held by the Debtors;

(h)    to settle, extend or compromise any indebtedness owing to the Debtors;

- 3 -

(i) to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Interim Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to this Order;

(j) to initiate, manage and direct all legal proceedings now pending or hereafter pending (including appeals or applications for judicial review) in respect of the Debtors, the Property or the Interim Receiver, including initiating, prosecuting, continuing, defending, settling or compromising the proceedings;

(k) to register a copy of this Order and any other Orders in respect of the Property against title to any of the Property;

(l) to apply for any permits, licences, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if considered necessary or appropriate by the Interim Receiver, in the name of the Debtors;

(m) to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limitation, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

(n) to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have; and

(o) to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations,

and in each case where the Interim Receiver takes any such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined below), including the Debtors, and without interference from any other Person.

## DUTY TO PROVIDE ACCESS AND CO-OPERATION TO THE INTERIM RECEIVER

4. Each of (i) the Debtors; (ii) all of the Debtors' current and former directors, officers, employees, agents, accountants, legal counsel and shareholders, and all other persons acting on its instructions or behalf; and (iii) all other individuals, firms, corporations, governmental bodies or agencies, or other entities having notice of this Order (collectively, "**Persons**" and each a "**Person**") shall forthwith advise the Interim Receiver of the existence of any Property in such Person's possession or control, shall grant immediate and continued access to the Property to the Interim Receiver, and shall deliver all such Property (excluding Property subject to liens the validity of which is dependent on maintaining possession) to the Interim Receiver upon the Interim Receiver's request.

5. All Persons, other than governmental authorities, shall forthwith advise the Interim Receiver of the existence of any books, documents, securities, contracts, orders, corporate and accounting records, and any other papers, records and information of any kind related to the business or affairs of the Debtors, and any computer programs, computer tapes, computer disks, or other data storage media containing any such information (collectively, the "**Records**") in that Person's possession or control. Upon request, governmental authorities shall advise the Interim Receiver of the existence of any Records in that Person's possession or control.

6.      Upon request, all Persons shall provide to the Interim Receiver or permit the Interim Receiver to make, retain and take away copies of the Records and grant to the Interim Receiver unfettered access to and use of accounting, computer, software and physical facilities, provided however that nothing in paragraphs 6, 7 or 8 of this Order shall require the delivery of Records, or the granting of access to Records, which may not be disclosed or provided to the Interim Receiver due to solicitor client privilege or statutory provisions prohibiting such disclosure.

7.      If any Records are stored or otherwise contained on a computer or other electronic system of information storage, whether by an independent service provider or otherwise, all Persons in possession or control of such Records shall forthwith give unfettered access to the Interim Receiver for the purpose of allowing the Interim Receiver to recover and fully copy all of the information contained therein whether by way of printing the information or making copies of computer disks or such other manner of retrieving and copying the information as the Interim Receiver in its discretion deems expedient, and shall not alter, erase or destroy any Records without the prior written consent of the Interim Receiver. Further, for the purposes of this paragraph, all Persons shall provide the Interim Receiver with all such assistance in gaining immediate access to the information in the Records as the Interim Receiver may require including, without limitation, providing the Interim Receiver with instructions on the use of any computer or other system and providing the Interim Receiver with any and all access codes, account names and account numbers that may be required to gain access to the information.

## NO PROCEEDINGS AGAINST THE INTERIM RECEIVER

8.      No proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against the Interim Receiver, with respect to any report made under or any action taken pursuant to the BIA, except with the written consent of the Interim Receiver or with leave of this Court.

## NO PROCEEDINGS AGAINST THE DEBTORS OR THE PROPERTY

9.      No Proceeding against or in respect of the Debtors or the Property shall be commenced or continued except with the written consent of the Interim Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Debtors or the Property are stayed and suspended pending further Order of this Court; provided, however, that nothing in this Order shall prevent any Person from commencing a Proceeding regarding a claim that might otherwise become barred by statute or an existing agreement if such Proceeding is not commenced before the expiration of the stay provided by this paragraph and provided that no further step shall be taken in respect of the Proceeding except for service of the initiating documentation on the Debtors and the Interim Receiver.

## NO EXERCISE OF RIGHTS OR REMEDIES

10.     All rights and remedies (including, without limitation, set-off rights) against the Debtors, the Interim Receiver, or affecting the Property, are stayed and suspended except with the written consent of the Interim Receiver or leave of this Court, provided however that nothing in this Order shall (i) empower the Interim Receiver or the Debtors to carry on any business which the Debtors is not lawfully entitled to carry on, (ii) affect the rights of any regulatory body as set forth in section 69.6(2) of the BIA, (iii) prevent the filing of any registration to preserve or

perfect a security interest, or (iv) prevent the registration of a claim for lien. This stay and suspension shall not apply in respect of any "eligible financial contract" as defined in the BIA.

## NO INTERFERENCE WITH THE INTERIM RECEIVER

11.    No Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, without written consent of the Interim Receiver or leave of this Court. Nothing in this Order shall prohibit any party to an eligible financial contract from closing out and terminating such contract in accordance with its terms.

## CONTINUATION OF SERVICES

12.    All Persons having oral or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods and/or services, including without limitation, all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Debtors are restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Interim Receiver, and the Interim Receiver shall be entitled to the continued use of the Debtors' current telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Interim Receiver in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Interim Receiver, or as may be ordered by this Court.

## INTERIM RECEIVER TO HOLD FUNDS

13.    All funds, monies, cheques, instruments, and other forms of payments received or collected by the Interim Receiver from and after the making of this Order from any source whatsoever including, without limitation, the sale of all or any of the Property and the collection of any accounts receivable, in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into one or more new accounts to be opened by the Interim Receiver (the "**Post-Interim Receivership Accounts**") and the monies standing to the credit of such Post-Interim Receivership Accounts from time to time, net of any disbursements provided for herein, shall be held by the Interim Receiver to be paid in accordance with the terms of this Order or any further order of this Court.

## EMPLOYEES

14.    Subject to the employees' right to terminate their employment, all employees of the Debtors shall remain the employees of the Debtors until such time as the Interim Receiver, on the Debtors' behalf, may terminate the employment of such employees. The Interim Receiver shall not be liable for any employee-related liabilities of the Debtors, including any successor employer liabilities as referred to in Section 14.06(1.2) of the BIA, other than amounts the Interim Receiver may specifically agree in writing to pay or in respect of obligations imposed specifically on receivers by applicable legislation, including sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act*, SC 2005, c 47. The Interim Receiver shall be liable for any employee-related liabilities, including wages, severance pay, termination

pay, vacation pay, and pension or benefit amounts relating to any employees that the Interim Receiver may hire in accordance with the terms and conditions of such employment by the Interim Receiver.

## PERSONAL INFORMATION

15. Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, SC 2000, c 5 or Section 18(1)(o) of the *Personal Information Protection Act*, SBC 2003, c 63, the Interim Receiver may disclose personal information of identifiable individuals to prospective purchasers or bidders for the Property and to their advisors, but only to the extent desirable or required to negotiate and attempt to complete one or more sales of the Property (each, a "**Sale**"). Each prospective purchaser or bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Sale, and if it does not complete a Sale, shall return all such information to the Interim Receiver, or in the alternative destroy all such information. The purchaser of any Property shall be entitled to continue to use the personal information provided to it, and related to the Property purchased, in a manner which is in all material respects identical to the prior use of such information by the Debtors, and shall return all other personal information to the Interim Receiver, or ensure that all other personal information is destroyed.

## LIMITATION ON ENVIRONMENTAL LIABILITIES

16. Nothing in this Order shall require the Interim Receiver to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release, or deposit of a substance contrary to any federal, provincial or other law relating to the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination (collectively "**Environmental Legislation**"), provided however that nothing herein shall exempt the Interim Receiver from any duty to report or make disclosure imposed by applicable Environmental Legislation.

17. The Interim Receiver shall not, as a result of this Order or anything done in pursuance of the Interim Receiver's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless the Interim Receiver is actually in possession.

18. Notwithstanding anything in federal or provincial law, the Interim Receiver is not personally liable in that position for any environmental condition that arises or environmental damage that occurred:

    (a) before the Interim Receiver's appointment; or,

    (b) after the Interim Receiver's appointment, unless it is established that the condition arose or the damage occurred as a result of the Interim Receiver's gross negligence or wilful misconduct.

19. Notwithstanding anything in federal or provincial law, but subject to paragraph 17 of this Order, where an order is made which has the effect of requiring the Interim Receiver to remedy

any environmental condition or environmental damage affecting the Property, if the Interim Receiver complies with the BIA section 14.06(4), the Interim Receiver is not personally liable for the failure to comply with the order and is not personally liable for any costs that are or would be incurred by any Person in carrying out the terms of the order.

## LIMITATION ON THE INTERIM RECEIVER'S LIABILITY

20.     The Interim Receiver shall incur no liability or obligation as a result of its appointment or the carrying out the provisions of this Order, save and except:

    (a)     any gross negligence or wilful misconduct on its part; or

    (b)     amounts in respect of obligations imposed specifically on interim receivers by applicable legislation.

Nothing in this Order shall derogate from the protections afforded the Interim Receiver by Section 14.06 of the BIA or by any other applicable legislation.

## INTERIM RECEIVER'S ACCOUNTS

21.     The Interim Receiver and its legal counsel, if any, are granted a charge (the "**Interim Receiver's Charge**") on the Property as security for the payment of their fees and disbursements, in each case at their standard rates, in respect of these proceedings, whether incurred before or after the making of this Order. The Interim Receiver's Charge shall form a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, but subordinate to (i) any valid and perfected security interest in the Property which rank ahead of RBC's interest therein (the "**Prior-Ranking Charges**"), and (ii) the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

22.     The Interim Receiver and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Interim Receiver and its legal counsel are referred to a judge of the Supreme Court of British Columbia and may be heard on a summary basis.

23.     Prior to the passing of its accounts, the Interim Receiver shall be at liberty from time to time to apply reasonable amounts, out of the monies in its hands, against its fees and disbursements, including legal fees and disbursements, incurred at the standard rates and charges of the Interim Receiver or its counsel, and such amounts shall constitute advances against its remuneration and disbursements when and as approved by this Court.

## FUNDING OF THE RECEIVERSHIP

24.     The Interim Receiver is authorized and empowered to borrow by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed $400,000.00 (or such greater amount as this Court may by further Order authorize) at any time, at such rate or rates of interest as the Interim Receiver deems advisable for such period or periods of time as it may arrange, for the purpose of funding the exercise of the powers and duties conferred upon the Interim Receiver by this Order, including interim expenditures. The whole of the Property shall be and is charged by way of a fixed and specific charge (the "**Interim Receiver's Borrowings Charge**") as

security for the payment of the monies borrowed, together with interest and charges thereon, in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, but subordinate in priority to (i) the Prior-Ranking Charges, (ii) the Interim Receiver's Charge, and (iii) the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

25.    Neither the Interim Receiver's Borrowings Charge nor any other security granted by the Interim Receiver in connection with its borrowings under this Order shall be enforced without leave of this Court.

26.    The Interim Receiver is authorized to issue certificates substantially in the form annexed as Schedule "B" hereto (the "**Interim Receiver's Certificates**") for any amount borrowed by it pursuant to this Order.

27.    The monies from time to time borrowed by the Interim Receiver pursuant to this Order or any further order of this Court and any and all Interim Receiver's Certificates evidencing the same or any part thereof shall rank on a *pari passu* basis, unless otherwise agreed to by the holders of any prior issued Interim Receiver's Certificates.

## ALLOCATION

28.    Any interested party may apply to this Court on notice to any other party likely to be affected for an order allocating the Interim Receiver's Charge and Interim Receiver's Borrowings Charge amongst the Property.

## SERVICE AND NOTICE OF MATERIALS

29.    The Interim Receiver shall establish and maintain a website in respect of these proceedings at: https://www.grantthornton.ca/service/advisory/creditor-updates/ (the "**Website**") and shall post there as soon as practicable:

(a)    all materials prescribed by statute or regulation to be made publicly available, including pursuant to Rule 10-2 of the *Supreme Court Civil Rules*, BC Reg 168/2009; and,

(b)    all applications, reports, affidavits, orders and other materials filed in these proceedings by or on behalf of the Interim Receiver, except such materials as are confidential and the subject of a sealing order or pending application for a sealing order.

30.    Any Person who is served with a copy of this Order and that wishes to be served with any future application or other materials in these proceedings must provide to counsel for each of the Interim Receiver and the Petitioner a demand for notice in the form attached as Schedule "C" (the "**Demand for Notice**"). The Interim Receiver and the Petitioner need only provide further notice in respect of these proceedings to Persons that have delivered a properly completed Demand for Notice. The failure of any Person to provide a properly completed Demand for Notice releases the Interim Receiver and the Petitioner from any requirement to provide further notice in respect of these proceedings until such Person delivers a properly completed Demand for Notice.

31. The Interim Receiver shall maintain a service list identifying all parties that have delivered a properly completed Demand for Notice (the "**Service List**"). The Interim Receiver shall post and maintain an up-to-date form of the Service List on the Website.

32. Any interested party, including the Interim Receiver, may serve any court materials in these proceedings by facsimile or by emailing a PDF or other electronic copy of such materials to the numbers or addresses, as applicable, set out on the Service List. Any interested party, including the Interim Receiver, may serve any court materials in these proceedings by mail to any party on the Service List that has not provided a facsimile number or email address, and materials delivered by mail shall be deemed received five (5) days after mailing.

33. Notwithstanding paragraph 32 of this Order, service of the Petition and any affidavits filed in support shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, RSC 1985, c C-50 and its regulations for the Federal Crown and the *Crown Proceedings Act*, RSBC 1996 c 89 in respect of the British Columbia Crown.

34. The Interim Receiver and its counsel are authorised to serve or distribute this Order, any other orders and any other materials as may be reasonably required in these proceedings, including any notices or other correspondence, by forwarding copies by facsimile or by email to the Debtors' creditors or other interested parties and their advisors. For greater certainty, any such distribution or service shall be deemed to be in satisfaction of any legal or juridical obligation and notice requirements within the meaning of clause 3(c) of the *Electronic Commerce Protection Regulations*.

**GENERAL**

35. Any interested party may apply to this Court to vary or amend this Order on not less than ~~seven~~ three 3 (~~7~~) clear business days' notice to the Service List and to any other party who may be affected by the variation or amendment, or upon such other notice, if any, as this Court may order.

36. The Interim Receiver may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

37. Nothing in this Order shall prevent the Interim Receiver from acting as a trustee in bankruptcy of the Debtors.

38. This Court requests the aid, recognition and assistance of any court, tribunal, regulatory or administrative body having jurisdiction, wherever located, including without limitation in Canada, the State of California, and all other States in the United States of America, to give effect to this Order and to assist the Interim Receiver and its agents in carrying out the terms of this Order. All such courts, tribunals and regulatory and administrative bodies are respectfully requested to make such orders and to provide such assistance to the Interim Receiver, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Interim Receiver and its agents in carrying out the terms of this Order.

39. The Interim Receiver is authorized and empowered to apply to any court, tribunal or regulatory or administrative body, wherever located, for recognition of this Order and for assistance in carrying out the terms of this Order and the Interim Receiver is authorized and empowered to

act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

40. ~~The Petitioner shall have its costs of this motion, up to and including entry and service of this Order, on a full indemnity basis to be paid by the Interim Receiver from the Debtors' estate with such priority and at such time and amount as this Court may determine.~~

41. Endorsement of this Order by counsel appearing on this application other than the Petitioner is dispensed with.

THE FOLLOWING PARTIES APPROVE OF THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

APPROVED BY:

_____
William E.J. Skelly, lawyer for the Petitioner,
Royal Bank of Canada

BY THE COURT

DISTRICT REGISTRAR

CHECKED

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED:    AUG 2 7 2024

Authorized Signing Officer

ANSON WONG

## SCHEDULE "A"

(List of Counsel)

| Name of Counsel | Party Represented |
|---|---|
| William E.J. Skelly<br>Jess R. Reid | The Petitioner, Royal Bank of Canada |
| Jordan Schultz | The Proposed Interim Receiver, Grant Thornton Limited |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

36742252

- 12 -

## SCHEDULE "B"

### INTERIM RECEIVER'S CERTIFICATE

CERTIFICATE NO. _____

AMOUNT        $ _____

1. THIS IS TO CERTIFY that Grant Thornton Limited, the Interim Receiver (the "**Interim Receiver**") of all of the assets, undertakings and properties of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. acquired for, or used in relation to a business carried on by the Debtors, including all proceeds thereof (collectively, the "**Property**") appointed by Order of the Supreme Court of British Columbia and/or the Supreme Court of British Columbia (In Bankruptcy and Insolvency) (the "**Court**") dated the 21st day of June, 2024 (the "**Order**") made in SCBC Action No. _____ has received as such Interim Receiver from the holder of this certificate (the "**Lender**") the principal sum of $ _____, being part of the total principal sum of $ _____ which the Interim Receiver is authorized to borrow under and pursuant to the Order.

2. The principal sum evidenced by this certificate is payable on demand by the Lender with interest thereon calculated and compounded monthly not in advance on the _____ day of each month after the date hereof at a notional rate per annum equal to the rate of _____ per cent above the prime commercial lending rate of _____ from time to time.

3. Such principal sum with interest thereon is, by the terms of the Order, together with the principal sums and interest thereon of all other certificates issued by the Interim Receiver pursuant to the Order or to any further order of the Court, a charge upon the whole of the Property, in priority to the security interests of any other person, but subject to (i) any valid and perfected security interest in the Property which rank ahead of RBC's interest therein, (ii) the priority of the charges set out in the Order, and (iii) in the *Bankruptcy and Insolvency Act*, and the right of the Interim Receiver to indemnify itself out of the Property in respect of its remuneration and expenses.

4. All sums payable in respect of principal and interest under this certificate are payable at the main office of the Lender at _____.

5. Until all liability in respect of this certificate has been terminated, no certificates creating charges ranking or purporting to rank in priority to this certificate shall be issued by the Interim Receiver to any person other than the holder of this certificate without the prior written consent of the holder of this certificate.

6. The charge securing this certificate shall operate to permit the Interim Receiver to deal with the Property as authorized by the Order and as authorized by any further or other order of the Court.

- 13 -

7.    The Interim Receiver does not undertake, and it is not under any personal liability, to pay any sum under this Certificate in respect of which it may issue certificates under the terms of the Order.

DATED the _____ day of _____, 2024.

Grant Thornton Limited, solely in its capacity as Interim Receiver of the Property, and not in its personal capacity

Per:
Name:
Title:

- 14 -

## SCHEDULE "C"

**Demand for Notice**

TO:       Royal Bank of Canada
          c/o MLT Aikins LLP
          Attention: William E.J. Skelly
          Email: wskelly@mltaikins.com

AND TO:   **Grant Thornton Limited**
          c/o Dentons Canada LLP
          Attention: Jordan Schultz
          Email: jordan.schultz@dentons.com

Re:       **In the matter of the Interim Receivership of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc.**

I hereby request that notice of all further proceedings in the above Interim Receivership be sent to me in the following manner:

  1.  By email, at the following address (or addresses):

      _____

      OR

  2.  By facsimile, at the following facsimile number (or numbers):

      _____

      OR

  3.  By mail, at the following address:

      _____

                                Name of Creditor: _____

                           Name of Counsel (if any): _____

                       Creditor's Contact Address: _____

                                                  _____

                                                  _____

                       Creditor's Contact Phone Number: _____

# EXHIBIT 2



No. S-244137
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN

### ROYAL BANK OF CANADA

PETITIONER

AND

### BIG RIG TRAILERS & LEASING INC., BIG RIG
### TIRES & SERVICES INC., and BIG RIG PARTZ INC.

RESPONDENTS

### ORDER MADE AFTER APPLICATION
### AMENDED AND RESTATED RECEIVERSHIP ORDER

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| | ) | |
| MR. JUSTICE MASUHARA | ) | MONDAY, AUGUST 19, 2024 |
| | ) | |

**ON THE APPLICATION** of Royal Bank of Canada ("**RBC**"), for an Order pursuant to Section 243(1) of the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "**BIA**"), and Section 39 of the *Law and Equity Act*, RSBC 1996 c 253, as amended (the "**LEA**"), appointing Grant Thornton Limited ("**GT**") as Receiver and Manager (in such capacity, the "**Receiver**") without security, of all of the assets, undertakings and property of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. (collectively, the "**Debtors**") acquired for, or used in relation to a business carried on by the Debtors, coming on for hearing this day at Vancouver, British Columbia.

**AND ON READING** the First Affidavit of Tro DerBedrossian sworn June 17, 2024, the Second Affidavit of Tro DerBedrossian sworn July 3, 2024, the Reports to the Court by GT, dated July 3, July 10 and August 16, 2024, and the consent of GT to act as the Receiver; **AND UPON** considering the Order granted by the Honourable Justice Masuhara on June 21, 2024 (the "**Interim Receivership Order**") appointing GT as interim receiver of the Debtors (in such capacity, the "**Interim Receiver**"); **AND ON HEARING** William E.J. Skelly, counsel for the Petitioner, RBC, Catherine Ewasiuk and Eamonn Watson, counsel for GT, and all other counsel as listed on Schedule "A" hereto;

**THIS COURT ORDERS AND DECLARES THAT:**

1.      This amended and restated receivership order amends and restates the order of this Court made in these proceedings on July 5, 2024.

**SERVICE**

2.      The time for service of the Notice of Hearing of Application for this Order and the Application Record is hereby abridged and validated so that this Application is properly returnable today and further service is hereby dispensed.

**APPOINTMENT OF RECEIVER AND CONCLUSION OF INTERIM RECEIVERSHIP**

3.      Pursuant to Section 243(1) of the BIA and Section 39 of the LEA, GT is appointed Receiver and Manager, without security, of all of the assets, undertakings and properties of the Debtors acquired for, or used in relation to a business carried on by the Debtors, including all proceeds (the "**Property**").

4.      Subject to paragraph 26 of this Order, the Interim Receivership Order is hereby terminated. Notwithstanding the termination of the Interim Receivership Order:

(a)      the Receiver is hereby authorized to perform such incidental duties as may be required to complete the administration of the Interim Receivership Order ("**Incidental Duties**") and shall be entitled to have its fees and disbursements, and the fees and disbursements of its counsel, for attending to such Incidental Duties approved and paid within these receivership proceedings without the necessity of a formal passing or assessment of their accounts; and

(b)      save and except that any and all acts, steps, agreements, and procedures validly taken, done, or entered into by the Interim Receiver during the pendency of the Interim Receivership Order shall remain valid, binding, and actionable within these Receivership proceedings (the "**Receivership**") and the Interim Receiver shall continue to have the benefit of the provisions of all Orders made in this Receivership, including all approvals, protections, and stays of proceedings in favour of the Interim Receiver in its capacity as Interim Receiver.

**RECEIVER'S POWERS**

5.      The Receiver is empowered and authorized, but not obligated, to act at once in respect of the Property and, without in any way limiting the generality of the foregoing, the Receiver is expressly empowered and authorized to do any of the following where the Receiver considers it necessary or desirable:

(a)      to take possession of and exercise control over the Property and any and all receipts and disbursements arising out of or from the Property;

(b)      to receive, preserve and protect the Property, or any part or parts thereof, including, but not limited to, changing locks and security codes, relocation of the Property, engaging independent security personnel, taking physical inventories and placing insurance coverage;

- 3 -

(c)    to manage, operate and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(d)    to compel 1000790856 Ontario Inc.. and any tenant or occupier of 1187 Welford Place, Woodstock, Ontario (the "**Woodstock Yard**") to grant the Receiver and its agents access to the Woodstock Yard for the purpose of assessing the vehicles and trailers located thereon to determine if any such vehicles or trailers form part of the Debtors' estate;

(e)    to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Receiver's powers and duties, including, without limitation, those conferred by this Order;

(f)    to purchase or lease such machinery, equipment, inventories, supplies, premises or other assets to continue the business of the Debtors or any part or parts thereof;

(g)    to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting these amounts, including, without limitation, enforcement of any security held by the Debtors;

(h)    to settle, extend or compromise any indebtedness owing to the Debtors;

(i)    to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to this Order;

(j)    to undertake environmental or workers' health and safety assessments of the Property and operations of the Debtors;

(k)    to initiate, manage and direct all legal proceedings now pending or hereafter pending (including appeals or applications for judicial review) in respect of the Debtors, the Property or the Receiver, including initiating, prosecuting, continuing, defending, settling or compromising the proceedings;

(l)    to market any or all of the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver considers appropriate;

(m)    to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business:

    (i)    without the approval of this Court in respect of a single transaction for consideration up to $250,000.00 provided that the aggregate consideration for all such transactions does not exceed $2,000,000.00; and

80852268

- 4 -

(ii)    with the approval of this Court in respect of any transaction in which the individual or aggregate purchase price exceeds the limits set out in subparagraph (i) above,

and in each such case notice under Section 59(10) of the *Personal Property Security Act*, RSBC 1996, c 359 shall not be required;

(n)    to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers, free and clear of any liens or encumbrances;

(o)    to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver considers appropriate on all matters relating to the Property and the Receivership, and to share information, subject to confidentiality terms as the Receiver considers appropriate;

(p)    to register a copy of this Order and any other Orders in respect of the Property against title to any of the Property;

(q)    to apply for any permits, licences, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if considered necessary or appropriate by the Receiver, in the name of the Debtors;

(r)    to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limitation, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

(s)    to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have;

(t)    without limiting paragraph 5(r) hereof, take such steps and execute, issue and endorse such documents as may be necessary or desirable to cause the Debtors, or any of them, to make an assignment of all their property for the general benefit of their creditors pursuant to Section 49 of the BIA;

(u)    to commence one or more foreign legal proceedings to further the objectives of this proceeding, including by way of example and not limitation, ancillary receiverships in the United States of America, proceedings under the Model Law on Cross-Border Insolvency (including Chapter 15 of the United States Bankruptcy Code, Title 11, United States Code, 11 U.S.C. Section 1501 et seq), petitions under Title 11, United States Code, Chapters 7 and 11, as well as any other foreign legal proceedings wherever required to be filed by the Receiver in its judgment to pursue recovery of the Debtors' Property; and

(v)    to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations,

and in each case where the Receiver takes any such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined below), including the Debtors, and without interference from any other Person.

## DUTY TO PROVIDE ACCESS AND CO-OPERATION TO THE RECEIVER

6.      Each of (i) the Debtors; (ii) all of the Debtors' current and former directors, officers, employees, agents, accountants, legal counsel and shareholders, and all other persons acting on its instructions or behalf; and (iii) all other individuals, firms, corporations, governmental bodies or agencies, or other entities having notice of this Order, which shall include insurance agencies and insurance brokers (collectively, "**Persons**" and each a "**Person**") shall forthwith advise the Receiver of the existence of any Property in such Person's possession or control, shall grant immediate and continued access to the Property to the Receiver (including any Property located at the Woodstock Yard), and shall deliver all such Property (excluding Property subject to liens the validity of which is dependent on maintaining possession) to the Receiver upon the Receiver's request.

7.      All relevant Persons shall immediately provide the Receiver with access to the Debtors' ADP account number(s), ADP account login information, and ADP contact person(s), and provide access to and/or deliver to the Receiver the payroll records for all of the employees of the Debtors so the Receiver can issue Records of Employment to the employees of the Debtors.

8.      All Persons, other than governmental authorities, shall forthwith advise the Receiver of the existence of any books, documents, securities, contracts, orders, corporate and accounting records, and any other papers, records and information of any kind related to the business or affairs of the Debtors, and any computer programs, computer tapes, computer disks, or other data storage media containing any such information (collectively, the "**Records**") in that Person's possession or control. Upon request, governmental authorities shall advise the Receiver of the existence of any Records in that Person's possession or control.

9.      Upon request, all Persons shall provide to the Receiver or permit the Receiver to make, retain and take away copies of the Records and grant to the Receiver unfettered access to and use of accounting, computer, software and physical facilities, provided however that nothing in paragraphs 7, 8, or 9 of this Order shall require the delivery of Records, or the granting of access to Records, which may not be disclosed or provided to the Receiver due to solicitor client privilege or statutory provisions prohibiting such disclosure.

10.     If any Records are stored or otherwise contained on a computer or other electronic system of information storage, whether by an independent service provider or otherwise, all Persons in possession or control of such Records shall forthwith give unfettered access to the Receiver for the purpose of allowing the Receiver to recover and fully copy all of the information contained therein whether by way of printing the information or making copies of computer disks or such other manner of retrieving and copying the information as the Receiver in its discretion deems expedient, and shall not alter, erase or destroy any Records without the prior written consent of the Receiver. Further, for the purposes of this paragraph, all Persons shall provide the Receiver with all such assistance in gaining immediate access to the information in the Records as the Receiver may require including, without limitation, providing the Receiver with instructions on the use of any computer or other system and providing the Receiver with any and all access codes, account names and account numbers that may be required to gain access to the information.

## NO PROCEEDINGS AGAINST THE RECEIVER

11.    No proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

## NO PROCEEDINGS AGAINST THE DEBTORS OR THE PROPERTY

12.    No Proceeding against or in respect of the Debtors or the Property shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Debtors or the Property are stayed and suspended pending further Order of this Court; provided, however, that nothing in this Order shall prevent any Person from commencing a Proceeding regarding a claim that might otherwise become barred by statute or an existing agreement if such Proceeding is not commenced before the expiration of the stay provided by this paragraph and provided that no further step shall be taken in respect of the Proceeding except for service of the initiating documentation on the Debtors and the Receiver.

## NO EXERCISE OF RIGHTS OR REMEDIES

13.    All rights and remedies (including, without limitation, set-off rights) against the Debtors, the Receiver, or affecting the Property, are stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that nothing in this Order shall (i) empower the Receiver or the Debtors to carry on any business which the Debtors is not lawfully entitled to carry on, (ii) affect the rights of any regulatory body as set forth in section 69.6(2) of the BIA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien. This stay and suspension shall not apply in respect of any "eligible financial contract" as defined in the BIA.

## NO INTERFERENCE WITH THE RECEIVER

14.    No Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, without written consent of the Receiver or leave of this Court. Nothing in this Order shall prohibit any party to an eligible financial contract from closing out and terminating such contract in accordance with its terms.

## CONTINUATION OF SERVICES

**15.**    All Persons having oral or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods and/or services, including without limitation, all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Debtors are restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Receiver, and the Receiver shall be entitled to the continued use of the Debtors' current telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver in accordance with normal payment practices of the Debtors or such other

practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court.

## RECEIVER TO HOLD FUNDS

16.    All funds, monies, cheques, instruments, and other forms of payments received or collected by the Receiver from and after the making of this Order from any source whatsoever including, without limitation, the sale of all or any of the Property and the collection of any accounts receivable, in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into one or more new accounts to be opened by the Receiver (the "**Post-Receivership Accounts**") and the monies standing to the credit of such Post-Receivership Accounts from time to time, net of any disbursements provided for herein, shall be held by the Receiver to be paid in accordance with the terms of this Order or any further order of this Court.

## EMPLOYEES

17.    Subject to the employees' right to terminate their employment, all employees of the Debtors shall remain the employees of the Debtors until such time as the Receiver, on the Debtors' behalf, may terminate the employment of such employees. The Receiver shall not be liable for any employee-related liabilities of the Debtors, including any successor employer liabilities as referred to in Section 14.06(1.2) of the BIA, other than amounts the Receiver may specifically agree in writing to pay or in respect of obligations imposed specifically on receivers by applicable legislation, including sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act*, SC 2005, c 47. The Receiver shall be liable for any employee-related liabilities, including wages, severance pay, termination pay, vacation pay, and pension or benefit amounts relating to any employees that the Receiver may hire in accordance with the terms and conditions of such employment by the Receiver.

## PERSONAL INFORMATION

18.    Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, SC 2000, c 5 or Section 18(1)(o) of the *Personal Information Protection Act*, SBC 2003, c 63, the Receiver may disclose personal information of identifiable individuals to prospective purchasers or bidders for the Property and to their advisors, but only to the extent desirable or required to negotiate and attempt to complete one or more sales of the Property (each, a "**Sale**"). Each prospective purchaser or bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Sale, and if it does not complete a Sale, shall return all such information to the Receiver, or in the alternative destroy all such information. The purchaser of any Property shall be entitled to continue to use the personal information provided to it, and related to the Property purchased, in a manner which is in all material respects identical to the prior use of such information by the Debtors, and shall return all other personal information to the Receiver, or ensure that all other personal information is destroyed.

## LIMITATION ON ENVIRONMENTAL LIABILITIES

19.    Nothing in this Order shall require the Receiver to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the

Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release, or deposit of a substance contrary to any federal, provincial or other law relating to the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination (collectively "**Environmental Legislation**"), provided however that nothing herein shall exempt the Receiver from any duty to report or make disclosure imposed by applicable Environmental Legislation.

20.     The Receiver shall not, as a result of this Order or anything done in pursuance of the Receiver's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless the Receiver is actually in possession.

21.     Notwithstanding anything in federal or provincial law, the Receiver is not personally liable in that position for any environmental condition that arises or environmental damage that occurred:

(a)     before the Receiver's appointment; or,

(b)     after the Receiver's appointment, unless it is established that the condition arose or the damage occurred as a result of the Receiver's gross negligence or wilful misconduct.

22.     Notwithstanding anything in federal or provincial law, but subject to paragraph 17 of this Order, where an order is made which has the effect of requiring the Receiver to remedy any environmental condition or environmental damage affecting the Property, if the Receiver complies with the BIA section 14.06(4), the Receiver is not personally liable for the failure to comply with the order and is not personally liable for any costs that are or would be incurred by any Person in carrying out the terms of the order.

## LIMITATION ON THE RECEIVER'S LIABILITY

23.     The Receiver shall incur no liability or obligation as a result of its appointment or the carrying out the provisions of this Order, save and except:

(a)     any gross negligence or wilful misconduct on its part; or

(b)     amounts in respect of obligations imposed specifically on receivers by applicable legislation.

Nothing in this Order shall derogate from the protections afforded the Receiver by Section 14.06 of the BIA or by any other applicable legislation.

## RECEIVER'S ACCOUNTS

24.     The Receiver and its legal counsel, if any, are granted a charge (the "**Receiver's Charge**") on the Property as security for the payment of their fees and disbursements, in each case at their standard rates, in respect of these proceedings, whether incurred before or after the making of this Order. The Receiver's Charge shall form a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, with the exception that the Receiver's Charge:

(a)    shall rank *pari passu* with the Interim Receiver's Charge granted in the Interim Receivership Order; and

(b)    shall be subordinate to:

    (i)    any valid and perfected security interest in the Property which rank ahead of RBC's interest therein (the "**Prior-Ranking Charges**"); and

    (ii)    the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

25.    The Receiver and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Receiver and its legal counsel are referred to a judge of the Supreme Court of British Columbia and may be heard on a summary basis.

26.    Prior to the passing of its accounts, the Receiver shall be at liberty from time to time to apply reasonable amounts, out of the monies in its hands, against its fees and disbursements, including legal fees and disbursements, incurred at the standard rates and charges of the Receiver or its counsel, and such amounts shall constitute advances against its remuneration and disbursements when and as approved by this Court.

**FUNDING OF THE RECEIVERSHIP**

27.    The Receiver is authorized and empowered to borrow by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed $750,000.00 (or such greater amount as this Court may by further Order authorize) at any time, at such rate or rates of interest as the Receiver deems advisable for such period or periods of time as it may arrange, for the purpose of:

(a)    funding the exercise of the powers and duties conferred upon the Receiver by this Order, including interim expenditures; and

(b)    paying amounts owing to the Interim Receiver which are secured by the Interim Receiver's Charge created by paragraph 21 of the Interim Receivership Order and/or the Interim Receiver's Borrowing Charge created by paragraph 24 of the Interim Receivership Order. Notwithstanding the termination of the Interim Receivership Order, the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge shall continue and shall be discharged upon the Interim Receiver filing with the Clerk of the Court a Certificate certifying that all amounts owing pursuant to the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge have been paid in full, thereupon the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge, shall be automatically vacated, of no further force and effect, and shall no longer form a charge on the Property.

The whole of the Property shall be and is charged by way of a fixed and specific charge (the "**Receiver's Borrowings Charge**") as security for the payment of the monies borrowed, together with interest and charges thereon, in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, but subordinate in

priority to (i) the Prior-Ranking Charges, (ii) the Interim Receiver's Charge, and (iii) the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

28.     Neither the Receiver's Borrowings Charge nor any other security granted by the Receiver in connection with its borrowings under this Order shall be enforced without leave of this Court.

29.     The Receiver is authorized to issue certificates substantially in the form annexed as Schedule "B" hereto (the "**Receiver's Certificates**") for any amount borrowed by it pursuant to this Order.

30.     The monies from time to time borrowed by the Receiver pursuant to this Order or any further order of this Court and any and all Receiver's Certificates evidencing the same or any part thereof shall rank on a *pari passu* basis, unless otherwise agreed to by the holders of any prior issued Receiver's Certificates.

## ALLOCATION

31.     Any interested party may apply to this Court on notice to any other party likely to be affected for an order allocating the Receiver's Charge and Receiver's Borrowings Charge amongst the Property.

## SERVICE AND NOTICE OF MATERIALS

32.     The Receiver shall establish and maintain a website in respect of these proceedings at: https://www.grantthornton.ca/service/advisory/creditor-updates/ (the "**Website**") and shall post there as soon as practicable:

(a)     all materials prescribed by statute or regulation to be made publicly available, including pursuant to Rule 10-2 of the *Supreme Court Civil Rules*, BC Reg 168/2009; and,

(b)     all applications, reports, affidavits, orders and other materials filed in these proceedings by or on behalf of the Receiver, except such materials as are confidential and the subject of a sealing order or pending application for a sealing order.

33.     Any Person who is served with a copy of this Order and that wishes to be served with any future application or other materials in these proceedings must provide to counsel for each of the Receiver and the Petitioner a demand for notice in the form attached as Schedule "C" (the "**Demand for Notice**"). The Receiver and the Petitioner need only provide further notice in respect of these proceedings to Persons that have delivered a properly completed Demand for Notice. The failure of any Person to provide a properly completed Demand for Notice releases the Receiver and the Petitioner from any requirement to provide further notice in respect of these proceedings until such Person delivers a properly completed Demand for Notice.

34.     The Receiver shall maintain a service list identifying all parties that have delivered a properly completed Demand for Notice (the "**Service List**"). The Receiver shall post and maintain an up-to-date form of the Service List on the Website.

35.     Any interested party, including the Receiver, may serve any court materials in these proceedings by facsimile or by emailing a PDF or other electronic copy of such materials to the numbers or addresses, as applicable, set out on the Service List. Any interested party,

including the Receiver, may serve any court materials in these proceedings by mail to any party on the Service List that has not provided a facsimile number or email address, and materials delivered by mail shall be deemed received five (5) days after mailing.

36.     Notwithstanding paragraph 32 of this Order, service of the Application and any affidavits filed in support shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, RSC 1985, c C-50 and its regulations for the Federal Crown and the *Crown Proceedings Act*, RSBC 1996, c 89 in respect of the British Columbia Crown.

37.     The Receiver and its counsel are authorised to serve or distribute this Order, any other orders and any other materials as may be reasonably required in these proceedings, including any notices or other correspondence, by forwarding copies by facsimile or by email to the Debtors' creditors or other interested parties and their advisors.  For greater certainty, any such distribution or service shall be deemed to be in satisfaction of any legal or juridical obligation and notice requirements within the meaning of clause 3(c) of the *Electronic Commerce Protection Regulations*.

**GENERAL**

38.     Any interested party may apply to this Court to vary or amend this Order on not less than seven (7) clear business days' notice to the Service List and to any other party who may be affected by the variation or amendment, or upon such other notice, if any, as this Court may order.

39.     The Receiver may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

40.     Nothing in this Order shall prevent the Receiver from acting as a trustee in bankruptcy of the Debtors.

41.     This Court requests the aid, recognition and assistance of any court, tribunal, regulatory or administrative body having jurisdiction, wherever located, including without limitation in Canada, the State of California, and all other States in the United States of America, to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order. All such courts, tribunals and regulatory and administrative bodies are respectfully requested to make such orders and to provide such assistance to the Receiver, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Receiver and its agents in carrying out the terms of this Order.

42.     The Receiver is authorized and empowered to apply to any court, tribunal or regulatory or administrative body, wherever located, for recognition of this Order and for assistance in carrying out the terms of this Order and the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

43.     The Petitioner shall have its costs of this motion, up to and including entry and service of this Order, on a full indemnity basis to be paid by the Receiver from the Debtors' estate with such priority and at such time and amount as this Court may determine.

- 12 -

44.    Endorsement of this Order by counsel appearing on this application other than the Petitioner is
dispensed with.

THE FOLLOWING PARTIES APPROVE OF THE FORM OF THIS ORDER AND CONSENT TO
EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

APPROVED BY:

_____

William E.J. Skelly, lawyer for the Petitioner,
Royal Bank of Canada

_____ J.

BY THE COURT

_____

DISTRICT REGISTRAR



80852268

## SCHEDULE "A"

(List of Counsel)

| Name of Counsel | Party Represented |
| --- | --- |
| William E.J. Skelly<br>Jess R. Reid | The Petitioner, Royal Bank of Canada |
| Catherine Ewasiak<br>Eamonn Watson | The Proposed Receiver, Grant Thornton Limited |
| Brian Hicks | Mitsubishi HC Capital Canada Inc. |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

- 14 -

## SCHEDULE "B"

## RECEIVER CERTIFICATE

CERTIFICATE NO. _____

AMOUNT               $ _____

1.     THIS IS TO CERTIFY that Grant Thornton Limited, the Receiver and Manager (the
       "**Receiver**") of all of the assets, undertakings and properties of Big Rig Trailers & Leasing
       Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. acquired for, or used in relation to
       a business carried on by the Debtors, including all proceeds thereof (collectively, the
       "**Property**") appointed by Order of the Supreme Court of British Columbia and/or the Supreme
       Court of British Columbia (In Bankruptcy and Insolvency) (the "**Court**") dated the 5th day of
       July, 2024 (the "**Order**") made in SCBC Action No._____ has received as such
       Receiver from the holder of this certificate (the "**Lender**") the principal sum of $_____,
       being part of the total principal sum of $_____ which the Receiver is authorized to
       borrow under and pursuant to the Order.

2.     The principal sum evidenced by this certificate is payable on demand by the Lender with
       interest thereon calculated and compounded monthly not in advance on the _____ day of each
       month after the date hereof at a notional rate per annum equal to the rate of _____ per cent
       above the prime commercial lending rate of _____ from time to time.

3.     Such principal sum with interest thereon is, by the terms of the Order, together with the
       principal sums and interest thereon of all other certificates issued by the Receiver pursuant to
       the Order or to any further order of the Court, a charge upon the whole of the Property, in
       priority to the security interests of any other person, but subject to (i) any valid and perfected
       security interest in the Property which rank ahead of RBC's interest therein, (ii) the priority of
       the charges set out in the Order, and (iii) in the *Bankruptcy and Insolvency Act*, and the right
       of the Receiver to indemnify itself out of the Property in respect of its remuneration and
       expenses.

4.     All sums payable in respect of principal and interest under this certificate are payable at the
       main office of the Lender at _____.

5.     Until all liability in respect of this certificate has been terminated, no certificates creating
       charges ranking or purporting to rank in priority to this certificate shall be issued by the
       Receiver to any person other than the holder of this certificate without the prior written consent
       of the holder of this certificate.

6.     The charge securing this certificate shall operate to permit the Receiver to deal with the
       Property as authorized by the Order and as authorized by any further or other order of the
       Court.

80852268

- 15 -

7.    The Receiver does not undertake, and it is not under any personal liability, to pay any sum under this Certificate in respect of which it may issue certificates under the terms of the Order.

DATED the _____ day of _____, 2024.

Grant Thornton Limited, solely in its capacity as Receiver and Manager of the Property, and not in its personal capacity

Per:
Name:
Title:

80852268

- 16 -

## SCHEDULE "C"

### Demand for Notice

TO:      **Royal Bank of Canada**
c/o MLT Aikins LLP
Attention: William E.J. Skelly
Email: wskelly@mltaikins.com

AND TO:    **Grant Thornton Limited**
c/o Dentons Canada LLP
Attention: Jordan Schultz
Email: jordan.schultz@dentons.com

Re:      **In the matter of the Receivership of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc.**

I hereby request that notice of all further proceedings in the above Receivership be sent to me in the following manner:

1. By email, at the following address (or addresses):

   _____

   OR

2. By facsimile, at the following facsimile number (or numbers):

   _____

   OR

3. By mail, at the following address:

   _____


Name of Creditor: _____

Name of Counsel (if any): _____

Creditor's Contact Address: _____

_____

_____

Creditor's Contact Phone Number: _____

No. S-244137
Vancouver Registry

### IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN:

**ROYAL BANK OF CANADA**

PETITIONER

AND:

**BIG RIG TRAILERS & LEASING INC., BIG RIG
TIRES & SERVICES INC., and BIG RIG PARTZ INC.**

RESPONDENTS

_____

**AMENDED AND RESTATED
RECEIVERSHIP ORDER**

_____

Dentons Canada LLP
20th Floor – 250 Howe Street
Vancouver. BC  V6C 3R8
Attention:  Jordan Schultz