1  JESS R. BRESSI (SBN 110264)
   DENTONS US LLP
2  4675 MacArthur Court, Suite 1250
3  Newport Beach, CA 92660
   Tel: (949) 241-8967
4  Email: jess.bressi@dentons.com

5  LYNN P. HARRISON III (Pro Hac Vice to be filed)
   DENTONS US LLP
6  1221 Avenue of the Americas
7  New York, NY 10020
   Tel: (212) 768-6700
8  Email: lynn.harrisoniii@dentons.com

9

10  Counsel for Foreign Representative

11              **UNITED STATES BANKRUPTCY COURT**

12       **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

13  In re:                          Case No. 6:24:bk-15309-WJ

14                                  (Voluntary Petition Filed September 6, 2024)
15                                  Chapter 15 Case

16                                  Hon. Judge Wayne Johnson

    BIG RIG TRAILERS & LEASING INC.,
17
        Debtor In Foreign Proceeding.   **DECLARATION OF MARK WENTZELL IN
18                                       SUPPORT OF: (A) VERIFIED PETITION FOR:
                                         (I) RECOGNITION OF FOREIGN MAIN
19                                       PROCEEDING, (II) RECOGNITION OF
                                         FOREIGN REPRESENTATIVE, AND (III)
20                                       RELATED RELIEF UNDER CHAPTER 15 OF
                                         THE BANKRUPTCY CODE AND (B)
21                                       PROVISIONAL RELIEF**

22                                       **Date: TBD**
                                         **Time: TBD**
23                                       **Place: 3420 Twelfth Street, Courtroom 304
24                                       Riverside, CA 92501-3819**

25      I, Mark Wentzell, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

26  under the laws of the United States of America, as follows:

27      1.    I am a Senior Vice President of Grant Thornton Limited ("GTL").  GTL is the court-

28  appointed receiver and manager of the assets, undertakings, and properties of the above-captioned

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

US_ACTIVE\127692651\V-4

debtor (the "<u>Debtor</u>").   GTL is the duly-authorized foreign representative (the "<u>Foreign Representative</u>") of the Debtor in pending Canadian proceedings (the "<u>Canadian Proceeding</u>") under the Canadian *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "<u>BIA</u>"), pending before the Supreme Court of British Columbia (Vancouver Registry) in Vancouver, Canada, as Case No. S-244137 (the "<u>Canadian Court</u>").   GTL is also the Licensed Insolvency Trustee in the Debtor's Canadian Proceeding in bankruptcy.

2.   Acting on behalf of GTL as receiver and Licensed Insolvency Trustee, I have investigated the business and affairs of the Debtor to the best of my ability since my engagement on this matter and make this Declaration based on that investigation. All facts set forth in this Declaration are based upon my personal knowledge; my review of relevant documents; information provided to me by employees of GTL working under my direction or supervision; my discussions with current or former representatives and/or agents of the Debtor; and/or my opinions based upon my experience concerning the Debtor's operations and financial condition. If called to testify, I could and would testify competently as stated herein. As to matters stated on information and belief, I believe them to be true.

3.   I am the person employed by GTL primarily responsible for and in charge of this engagement including the management, supervision, and control of the Canadian Proceeding and the receivership created by orders entered by the Canadian Court and the Debtor's Canadian bankruptcy case.

4.   On behalf of GTL as Foreign Representative, I provide this Declaration in support of the verified petition (together with the Official Form b401 chapter 15 petition (the "<u>Petition</u>") filed concurrently herewith, the "<u>Verified Petition</u>") for recognition of the Canadian Proceeding with respect to the Debtor as a "foreign main proceeding," or a "foreign non-main proceeding," recognition of the Foreign Representative, provisional relief, and certain related relief pursuant to

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

1  sections 101, 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1515, 1516, 1517, 1519, 1520, 1521, and

2  1522 of title 11 of the United States Code (the "Bankruptcy Code").

3       5.    I am a Chartered Professional Accountant, a Licensed Insolvency Trustee, and a

4  Chartered Insolvency and Restructuring Professional of the Canadian Association of Insolvency

5  and Restructuring Professionals.  I hold a MBA and law degree from Dalhousie University. I am

6  also a qualified United Kingdom Insolvency Professional and a past member of the Nova Scotia

7  Barristers Society. I am a member of the Insolvency Institute of Canada.

8       6.    I have over 30 years of professional service, with the last 25 years exclusively in

9  recovery and restructuring. I began my recovery and restructuring experience overseas, practicing

10  in various jurisdictions and qualifying as a restructuring professional in the United Kingdom. I

11  returned to Canada in 2003 after seven years overseas and became a qualified Canadian insolvency

12  practitioner in 2004. I have been GTL's Vancouver restructuring practice unit leader since 2006.

13       7.    I have reviewed the Verified Petition and the Motion for Provision Relief, and

14  believe the factual assertions therein are true and correct, and to the best of my knowledge the relief

15  requested therein is appropriate and necessary for GTL as receiver and Licensed Insolvency Trustee

16  to fully and efficiently perform its duties under the receivership orders and the Debtor's bankuptcy.

17

18  **BACKGROUND FACTUAL STATEMENT**

19       8.    As an overview, the Debtor is a Canadian trucking company engaged in, what

20  appears on the surface to be, the legitimate business of reselling and leasing trailers and trucks.  The

21  Debtor borrowed millions of dollars under a flooring loan arrangement and other loans, purchased

22  semi-trucks, refrigerated trailers and refrigeration units using the proceeds. Upon being audited by

23  its lender, the Debtor was unable to account for all of the purchased rolling stock.

24       9.    As a result, Royal Bank of Canada, as a secured lender of the Debtor, petitioned the

25  Canadian Court for the appointment of GTL as interim receiver of the Debtor and two of its

26  affiliates.  The Canadian Court appointed GTL as an interim receiver of the Debtor and its affiliates

27  on first an interim basis, and later a final basis.  In so doing, the Canadian Court authorized GTL to

28

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

exercise control over all of the assets, undertakings, and properties of the Debtor that were acquired for, or used in relation to, the businesses carried on by the Debtor and its affiliates.

10.     Since GTL's appointment, the Debtor's insiders have largely refused to cooperate with GTL and have not fully complied with various orders of the Canadian Court, so much so that contempt court proceedings are in process in Canada.  GTL has made multiple attempts to carry out its mandate to investigate the Debtor's assets but has been provided with limited information.  I believe that the Debtor's insiders have relocated millions of dollars of the Debtor's assets throughout Canada and to the United States.

11.     GTL recently petitioned the Canadian Court for an order amending and restating its authority as receiver, and explicitly authorizing it as the Foreign Representative to commence a chapter 15 proceeding in the United States.  On August 19, 2024, the Canadian Court entered such an amended and restated receivership order (the "ARRO") and granted GTL such explicit authority, in order to protect and further the objectives of the Canadian Proceeding, collect the Debtor's assets and maximize value for the benefit of all creditors.  A true and correct certified copy of the August 19, 2024 ARRO is attached as Exhibit "1."

12.     On September 10, 2024, GTL as the Receiver, filed an "assignment" of Debtor into bankruptcy under the BIA.  Under Canadian law, the "assignment" of the Debtor by GTL is analogous to the filing of a voluntary bankruptcy petition commencing a Ch. 7 under the United States Bankruptcy Code.  As with Chapter 7's, these are collective proceedings for the benefit of all creditors of a debtor supervised by the same Canadian Court as the receivership.  A Licensed Insolvency Trustee is appointed, in this case, GTL. Attached as Exhibit "2" to the concurrently filed Request for Judicial Notice are true and correct copies of the bankruptcy assignment and schedules that GTL caused to be filed on September 10, 2024 that were prepared at my direction.  As shown in the schedules, I believe that the Debtor's creditors are over  CAD $70.0 million which is about USD $51.5 million.

13.     Like the automatic stay of Bankruptcy Code Section 362, a stay of proceedings under the BIA is obtained by filing the assignment with an administrative officer and does not require either a court hearing or proof of the elements for granting injunctive relief.  GTL filed the

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8367

DECL. OF WENTZELL

US_ACTIVE\127692651\V-4

assignment due in large part to its discovery of various suspicious transfers by Debtor aggregating millions of dollars and taking place on or after September 11, 2023.  Like the avoidance powers provided for in the Bankruptcy Code, under the BIA and certain provincial statutes, the trustee may impugn or set aside certain transactions or payments entered or made by the Debtor. These are generally described as fraudulent preferences, preferences, fraudulent conveyances, and transfers under value. There are limitation periods that apply in each case and a potentially applicable one-year limitations period may apply to the September 11, 2023 transfers.

14.     Empowered by the Canadian Court with both of these authorities, GTL as the Foreign Representative of Debtor, has concurrently filed Debtor's Verified Petition, whereby it seeks entry of an order: (i) recognizing the Canadian Proceeding as a foreign main proceeding; (ii) recognizing the Foreign Representative; (iii) granting provisional relief pursuant to Section 1519 and as outlined in the Provisional Relief Motion filed herewith, and (iv) such other and further relief as may be justified under the circumstances.

## FACTUAL STATEMENT IN SUPPORT OF PETITION

### A.     General Background

15.     The Debtor is a Canadian corporation doing business primarily in Canada.  The Debtor's registered address is 2105 Carpenter Street, Abbotsford, British Columbia, V2T 6L9, Canada.

16.     Prior to the commencement of the Canadian Proceeding, the Debtor, together with its two Canadian non-chapter 15 debtor affiliates,[1] carried on various lines of business related to commercial trucks and trailers, including: (i) resales of new and used semi-trucks and trailers (with

---

[1] The Debtor, along with two of its affiliates, are the subject of the Canadian Proceeding.  The Debtor's two affiliates are: Big Rig Tires & Services Inc., a trucking services company, and Big Rig Partz Inc., a trucking parts distribution company (collectively, the "Affiliates").  The Affiliates are also registered in Abbotsford, British Columbia.  While the Foreign Representative seeks only to commence a chapter 15 case as to the Debtor at this time, the Foreign Representative reserves the right to commence additional chapter 15 cases as to the Debtor's two Affiliates, and seek joint administration of those chapter 15 cases with this chapter 15 case, as justice requires and equity permits.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8867

US_ACTIVE\127692651\V-4

DECL. OF WENTZELL

an emphasis on new trailers); (ii) leases of trailers to customers in the trucking industry; (iii) sales of tires for and servicing of semi-trucks and trailers; and (iv) sales of spare parts for semi-trucks and trailers.

17.    I am informed that the Debtor and its two affiliates are directly or indirectly owned by Kalvinder Singh of Rancho Cucamonga, California, USA or an affiliate and that Kalvinder Singh also owns a group of companies (the "Kal Group") based in Fontana, California,. Specifically, at the highest level, the Debtor was controlled by its two and only directors, Kalvinder Singh and Amit Jeed of London, Ontario, Canada. I am informed that Kalvinder Singh is also an officer in the Kal Group. Prior to the commencement of the Canadian Proceeding, I am informed that day-to-day management was by residents of Canada. Day-to-day management of the Debtor at the commencement of the Canadian Proceeding was by two senior employees of the Kal Group, MP Singh (also known as Sukhvinder Singh) and Deepanshu Agarwal (collectively, "Management"), both of whom may reside in California.

18.    Prior to the commencement of the Canadian Proceeding, a large secured creditor of the Debtor, the Royal Bank of Canada ("RBC"), provided Debtor and its Affiliates various secured credit facilities including a flooring loan to the Debtor guaranteed by its Affiliates. The flooring loan was for the acquisition of new and used equipment. Pursuant to certain amended and restated loan agreements between RBC and the Debtor and its Affiliates copies of which were provided to me in connection with the Canadian Proceeding, RBC agreed to advance funds to the Debtor and its Affiliates under various facilities secured by interests in substantially all of the property of the Debtor and its Affiliates.

19.    RBC provided the Canadian Court and GTL documentary and testimonial evidence that as of July 2, 2024, the Debtor and its Affiliates were indebted to RBC in the amounts of USD $7,428,297.24 and CAD $6,332,802.55 (plus costs and interest accruing thereafter). Furthermore, RBC provided the Canadian Court and GTL evidence that the Debtor and its Affiliates defaulted under their obligations to RBC in or around February, 2024. RBC subsequently conducted an audit of the truck and trailer inventory of the Debtor and its Affiliates and determined a number of trailers

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

had gone missing, have been hidden, had been sold, or had been relocated to unknown locations in the United States and Canada.

20.    Thereafter, RBC retained GTL as financial advisor, with the consent of the Debtor. RBC provided GTL with a list of inventory that it had advanced funds against, consisting of: 89 trailers, 51 refrigeration ("Reefer") units fitted to trailers creating refrigerated trailers, and 11 semi-trucks (together, the "RBC Units").

21.    As financial adviser, GTL was informed by Debtor's Management on a call on June 6, 2024 that: (i) approximately 2/3rds of the RBC Units were in the United States; (ii) Harpreet Sandhu, who formerly managed the operations of the Debtor and its affiliates, had misappropriated trailers belonging to the Debtor and CAD $1.5 million of cash from its bank accounts; (iii) Mr. Sandhu was working with his brother-in-law, who had a management position with the Kal Group at the time but has since left; and (iv) Management was discussing a deal (the "Settlement") with Mr. Sandhu that would allow him to keep the CAD $1.5 million in exchange for the return of the trailers.

22.    On a further call with Debtor's Management held on June 10, 2024, GTL was informed that: (i) 12 of the 89 RBC Unit trailers had been sold and funds not remitted to RBC to settle outstanding balances on those units; (ii) the remaining 77 RBC Unit trailers had all been moved back to Canada 2 or 3 months ago; (iii) the Settlement had been agreed and that Mr. Sandhu had a claim against the Debtor for unpaid commission; (iv) Mr. Sandhu was providing the location of the misappropriated trailers a few at a time and Debtor's Management believed these all to be RBC Units; and (v) Debtor's Management intended to gather these to a yard in Southern Ontario and expected to have 55 to 60 RBC Unit trailers available for GTL to inspect by June 13, 2024.

23.    On June 13, 2024, representatives of GTL at my direction visited yards in Bolton, Ontario, Canada (the "Bolton Yard") and Woodstock, Ontario, Canada (the "Woodstock Yard") accompanied by Jaspal Singh, believed to be a representative of the Kal Group flown to Canada to deal with the return of the misappropriated trailers.  Mr. Jaspal Singh identified 11 Reefer trailers at the Bolton Yard (the "Bolton Trailers") and 46 Reefer trailers at the Woodstock Yard (the "Woodstock Trailers") as the returned trailers. GTL inspected and photographed the Vehicle

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

1  Identification Number ("VIN") plates displayed on the Bolton Trailers and the Woodstock Trailers

2  and identified 10 of the Bolton Trailers and all 46 of the Woodstock Trailers as RBC Units.

3      24.    GTL had previously attended at the Debtor and its affiliates premises in Calgary,

4  Alberta, Canada (the "Calgary Premises") and Abbotsford, British Columbia, Canada (the

5  "Abbotsford Premises) to inspect rolling stock held at those locations. On review of the VINs

6  inspected at each of the Woodstock Yard, the Bolton Yard, the Calgary Premises and the Abbotsford

7  Premises, GTL noted: (i) four of the VIN plates seen on Woodstock Trailers matched VINs seen

8  elsewhere previously, three at the Abbotsford Premises and one at the Calgary Premises (the only

9  RBC Units identified at these premises); (ii) the duplicates each had the same VIN displayed but a

10 manufacture date differing by one month; and (iii) the fonts and bordering of the VIN plates on the

11 Woodstock Trailers differed from the duplicates, and from non-RBC Unit reefer trailers from the

12 same manufacturer that had been inspected by GTL at the Calgary Premises.

13     25.    On June 14, 2024, GTL informed Debtor's Management of the duplicate VIN plates

14 it had identified. On June 18, 2024, Debtor's Management informed GTL that the duplicates at the

15 Calgary Premises and the Abbotsford Premises had been stolen overnight. GTL confirmed the

16 duplicates had been removed but was unable to confirm the theft with employees at either location.

17 Later, following its appointment as receiver, GTL was informed by a contractor to the Debtor that

18 he had moved the duplicate located at the Calgary Premises on the instruction of Kalvinder Singh.

19 The contractor provided the location of the parked trailer and GTL was able to take possession of it

20 on July 8, 2024. The three Abbotsford duplicates have not been located to date.

21     26.    As interim receiver, GTL identified a further three instances of duplicate VIN plates,

22 two involving a Bolton Trailer and one a Woodstock Trailer.

23     **B.    The Canadian Proceeding and Events Leading to this Chapter 15 Case**

24     **(i)    Missing Trailers and Changed VIN Numbers**

25     27.    On June 21, 2024, upon application of RBC, the Canadian Court entered an order

26 ("Interim Receivership Order") pursuant to the BIA and LEA appointing GTL as interim receiver

27 over the assets, undertakings, and properties of the Debtor and its Affiliates acquired for, or used in

28 relation to, the business carried on by the Debtor and its Affiliates (the "Property").

28.     The same day and at my direction, representatives of GTL attended the various premises of the Debtor and its affiliates, including the Bolton Yard and the Woodstock Yard, to take possession of the Property and: (i) found the premises at Brampton, Ontario and Edmonton, Alberta to have been emptied of all assets; and (ii) at the Calgary Premises, at least one pickup truck was driven off site by an employee before the Receiver's security was in position.

29.     The same day, the Debtor's and its Affiliates' corporate bank accounts were frozen for outgoing transactions. GTL has subsequently identified certain wire payments from the Debtor's and its Affiliates' bank accounts with a non-RBC institution: (i) six wire payments totaling CAD $2.05 million made to the Kal Group in the 11 days preceding the Interim Receivership Order; and (ii) four wire payments totaling CAD $1.12 million made to SPG Transportation Inc., a company incorporated in California, three on May 21, 2024 and one on April 22, 2024. These wire payments are all during the time that the Debtor and its Affiliates were under the control of Management, who, as noted above, are senior employees of the Kal Group.

30.     On attempting taking possession at the Bolton Yard and the Woodstock Yard, representatives of GTL: (i) observed that the Bolton Trailers were no longer located at the Bolton Yard; (ii) observed that the Woodstock Trailers remained at the Woodstock Yard and the corresponding VINs matched those identified during the GTL's previous June 13, 2024 site visit; (iii) served the third-party security at the Woodstock Yard (the "Yard Security") with the Interim Receivership Order; and (iv) arranged for its own 24-hour private security (the "Private Security") to monitor the entrance of the Woodstock Yard while GTL made arrangements to remove all Woodstock Trailers on June 28, 2024.

31.     On June 28, 2024 and at my direction, an agent employed by GTL (the "Agent") attended the Woodstock Yard to remove the Woodstock Trailers.  Yard Security was present upon the Agent's arrival.  The Agent: (i) was initially denied access to the Woodstock Yard, by Yard Security, and was only allowed access once GTL had spoken with Jaspal Singh, the representative of the Kal Group that initially identified the Woodstock Trailers to GTL; (ii) observed that 46 trailers were still present at the Woodstock Yard, however only one VIN matched that which had been previously observed on prior visits; (iii) observed that the VIN plates of the Woodstock Trailers

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

appeared to have been tampered with, which was evidenced by larger VIN plates having been removed and/or exchanged with smaller VIN plates of a different font, logo, and bordering, with the rivets holding the larger VIN plates still being intact; and (iv) was escorted from the Woodstock Yard by Yard Security and was not permitted to remove the Woodstock Trailers.

### (ii)   The Appointment of GTL as the Permanent Receiver and Investigations into the Woodstock Trailers.

32.   On July 4, 2024, GTL submitted its first interim report in its capacity as interim receiver of the Debtor to the Canadian Court, wherein GTL apprised the Canadian Court of its findings as of the date thereof and as set forth therein, and recommended a path forward.  I signed the report and it was prepared at my direction and with my input.

33.   On July 5, 2024, the Canadian Court entered an order (the "Receivership Order") appointing GTL as receiver of the Property on a final basis.

34.   GTL subsequently learned from the property owner of Woodstock Yard (the "Woodstock Landlord") that Diamond X-Press LLC ("Diamond") is a tenant leasing the Woodstock Yard.  Diamond has asserted that its related company, 1000798196 Ontario Inc. ("98196 ON"), owns the Woodstock Trailers. To date, neither Diamond nor 98196 ON have provided any support for this assertion to GTL or the Canadian Court.

35.   Based on GTL's investigation, neither Diamond nor 98196 ON operate at arms' length from the Debtor or the Kal Group.  Specifically, (i) Sikander Randhawa, a director of 98196 ON, is a former senior employee in the Kal Group and (along with Kalvinder Singh, owner and director of both the Debtor and the Kal Group) is party to the Settlement and is brother-in-law to Harpreet Sandhu, who formerly managed the Debtor's operations and is accused of misappropriating its assets; (ii) GTL has identified sales of 169 trailers (a mix of reefers and dry vans) to 98196 ON by the Debtor for a total of approximately CAD $11 million, of which only CAD $400,000 is marked as paid. The sales mostly took place between February 21, 2024 and April 8, 2024; (iii) the Debtor has financing statements registered at the Ontario Personal Property Registry against 92 trailers (again, a mix of reefers and dry vans) owned by 98196 ON; and (iv) many of the trailers sold to 98196 ON are listed in the Settlement.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

36.    On July 8, 2024, counsel for GTL wrote to the Woodstock Landlord and Diamond to confirm the terms of the Receivership Order and advise that the Woodstock Trailers should not be moved or relocated without the written consent of GTL or further order of the Canadian Court.

37.    On July 9, 2024, the Agent attended the Woodstock Yard again to inspect the 46 Woodstock Trailers observed on the Agent's June 28, 2024 visit.  The Agent was permitted to inspect the VIN plates and concealed VINs of the Woodstock Trailers.

38.    On the July 9, 2024 visit, the Agent observed that a path behind the Woodstock Yard was being cleared, such that the Woodstock Trailers could be removed without using the front gate of Woodstock Yard. Based on my experience, the trailers such as the Woodstock Trailers are easily movable and lack distinguishing features (other than VIN plates, which as set forth herein, can be, and have been, tampered with).  If the Woodstock Trailers were again moved, it would be extremely difficult to locate them.

**(iii)    <u>Emergency Intervention by GTL to Secure Assets</u>.**

39.    Given the convolution of tampered or altered VINs, and the potential for imminent removal of the Woodstock Trailers, GTL sought emergency intervention from, and direction of, the Canadian Court on an *ex parte* basis.

40.    On July 10, 2024, the Canadian Court entered an order (the "<u>Securing Order</u>") granting GTL, among other relief, authorization to take possession and exercise control over the 46 Woodstock Trailers and to store the same at a secure location.

41.    Also on July 10, 2024, GTL submitted its first report in its capacity as receiver of the Debtor to the Canadian Court, wherein GTL apprised the Canadian Court of its findings as of the date thereof, and as set forth herein, and recommended course of action.  I signed the report and it was prepared at my direction and with my input.

42.    On July 12, 2024, the Agent attended the Woodstock Yard to remove the 46 Woodstock Trailers pursuant to the Securing Order.  While at the Woodstock Yard, the Agent identified a total of 57 trailers, 11 more trailers than seen during its July 9, 2024 visit and coinciding

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

1   with the number of trailers previously located at the Bolton Yard.  The Agent also observed that a

2   number of the VINs had once again been tampered with.

3         43.     Based solely on VINs shown on the VIN plates at the Woodstock Yard, the 57 trailers

4   identified on July 12, 2024 were comprised of: (i) 21 of the 46 Woodstock Trailers seen by the

5   Agent on June 28, 2024, including the only trailer bearing a VIN of an RBC Unit; (ii) one trailer

6   showing a VIN that matched one of the Bolton Trailers, identified during the June 13, 2024 site visit

7   to Bolton Yard; (iii) 24 trailers with VINs that had not been seen by GTL previously; and (iv) 11

8   additional trailers at the Woodstock Yard, bearing VINs previously unseen by GTL  (the "Additional

9   Woodstock Trailers").   The  Agent  removed  the  46  trailers  listed  in  subparagraphs  (i)-(iii)

10  immediately above and transferred them to a secure yard under GTL's custody (the "Receiver's

11  Yard").   However, the Agent was unable to remove the Additional Woodstock Trailers because

12  Yard Security would not permit the Agent to take such action.  Yard Security further hindered the

13  Agent's efforts to take pictures, or gather the VINs, of the Additional Woodstock Trailers.

14        44.     Private Security has monitored the perimeter of the Woodstock Yard since June 21,

15  2024 and reports that no movements of the Woodstock Trailers out of Woodstock Yard were made

16  between June 21, 2024 and July 12, 2024, suggesting that VIN plates were changed or altered onsite.

17  GTL was informed by the Agent that the Woodstock Trailers were the only new refrigerated trailers

18  at the Woodstock Yard and so easily distinguishable. They were also stored in an area of the

19  Woodstock Yard partially visible to the Private Security from the perimeter.

20        45.     On July 26, 2024, CIMC Reefer Trailer Inc. ("CIMC"), the manufacturer of the

21  Woodstock Trailers, attended at the Receiver's Yard to inspect the Woodstock Trailers. CIMC have

22  since advised GTL that they believe the current VIN plates to be legitimate. It is therefore believed

23  that the RBC Unit VIN plates on the Woodstock Trailers when GTL was first allowed to inspect

24  them by the representative of the Kal Group were forgeries.

25        46.     On July 17, 2024 and at my direction, the Agent visited the Woodstock Yard to

26  inspect the Additional Woodstock Trailers and discovered that none of the 11 VINs corresponding

27  to the Additional Woodstock Trailers matched any VIN previously identified by GTL.

28

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

US_ACTIVE\127692651\V-4

47.     Upon further investigation of the VINs of the Additional Woodstock Trailers, GTL has determined that: (i) eight of the 11 Additional Woodstock Trailers were originally purchased by the Debtor; (ii) the remaining three Additional Woodstock Trailers were originally purchased by Kal Trailers and Leasing Inc., an entity controlled by the Kal Group; (iii) none of the Additional Woodstock Trailers are RBC Units; and (iv) 10 of the 11 Additional Woodstock Trailers are reflected in the Debtor's records as sales to 98196 ON.

48.     Given the results of the investigation into the Additional Woodstock Trailers, and the potential for removal of the Additional Woodstock Trailers, GTL sought intervention from, and direction of, the Canadian Court on a with notice basis.

49.     On August 16, 2024, GTL submitted its second report in its capacity as receiver of the Debtor to the Canadian Court, wherein GTL apprised the Canadian Court of its findings as of the date thereof, and as set forth herein, and recommended course of action.  I signed the report and it was prepared at my direction and with my input.

50.     On August 19, 2024, the Canadian Court entered an order (the "Second Securing Order") granting GTL, among other relief, authorization to take possession and exercise control over the 11 Additional Woodstock Trailers and to store the same at a secure location.

51.     On August 23, 2024, the Agent attended the Woodstock Yard to remove the Additional Woodstock Trailers to the Receiver's Yard pursuant to the Second Securing Order. While at the Woodstock Yard, the Agent identified an additional 30 dry trailers (the "Additional Woodstock Dry Trailers') in the space leased by Diamond. The Agent was able to record the VINs displayed on the Additional Woodstock Dry Trailers but was prevented from taking pictures by Yard Security.  Subsequently, on September 9, 2024, my agents took possession of the Additional Woodstock Dry Trailers.

52.     Upon investigation of the VINs of the Additional Woodstock Dry Trailers, GTL has determined that: (i) none of the Additional Woodstock Dry Trailers are RBC Units; and (iv) 26 of the 30 Additional Woodstock Trailers are reflected in the Debtor's records as sales to 98196 ON.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

US_ACTIVE\127692651\V-4

53.     Given the results of the investigation into the Additional Woodstock Dry Trailers, and the potential for removal of the Additional Woodstock Dry Trailers, GTL sought intervention from, and direction of, the Canadian Court on a with notice basis. The application was be heard and granted on September 5, 2024. The Canadian Court ordered possession of the Additional Woodstock Trailers be given to the Foreign Representative and my team obtained possession of the Additional Woodstock Trailers last week.

54.     On August 28, 2024, GTL submitted its third report in its capacity as receiver of the Debtor to the Canadian Court, wherein GTL apprised the Canadian Court of its findings as of the date thereof, and as set forth herein, and recommended course of action.  I signed the report and it was prepared at my direction and with my input.

55.     Since submitting the third report, GTL has identified transactions in the accounting records of the Debtor listing sales from the Debtor to the Kal Group of (i) 67 of the 151 RBC Units (including 57 of 89 trailers) mostly in late 2023 and (ii) 86 of 232 units (including 34 of 72 trailers) financed on a Mitsubishi HC Capital Canada, Inc. floorplan loan by the Debtor. All associated invoices are either marked as unpaid in the accounting records or are paid by applying to intercompany balances between the Debtor and the Kal Group.

**C.     Management's Continued Lack of Cooperation**

56.     Until its appointment as interim receiver, GTL primarily communicated with Debtor's Management on behalf of the Debtor and its Affiliates.

57.     GTL caused the Interim Receivership Order, and the Receivership Order, to be served on Management, and repeatedly advised Debtor's Management of its obligations thereunder.

58.     Shortly after GTL was appointed interim receiver, Debtor's Management retained counsel ostensibly on behalf of the Debtor and its Affiliates in connection with this matter.

59.     Debtor's Management thus has at all times been aware of its obligations in connection with the Interim Receivership Order and the Receivership Order, including its obligation to provide the Receiver with access to the Property and records of the Debtor and its Affiliates.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

US_ACTIVE\127692651\V-4

60.     However, as set forth herein, Debtor's Management has continued to flout the orders of the Canadian Court.  In addition to Debtor's Management's continued prevention and obstruction of GTL in its capacity as receiver and as Foreign Representative from inspecting and taking possession of the Property. Debtor's Management has refused to provide GTL the complete books and records of the Debtor, including an itemized list of the Debtor's trucks, trailers, and Reefer inventory, including information on the location and persons in control of the same, despite repeated requests.[2] Debtor's Management's and the Debtor's insiders' obdurate disobedience of the orders of the Canadian Court has risen to the level of contempt of court and proceedings are underway in Canada by the Foreign Representative to obtain citations of contempt and penalties.

61.     Prior to the filing of the Verified Petition, GTL met with representatives for the Kal Group and the Debtor, and its Affiliates.  GTL was informed that the Debtor, and its Affiliates, have caused most, if not all, of the RBC Units to be relocated to the United States, primarily in the state of Indiana, as well as California. Of the various information required by GTL on the call, only a copy of the Settlement Agreement has been provided to date.

62.     The Foreign Representative's investigation of the foregoing is ongoing.

**D.     The Commencement of this Chapter 15 Case**

63.     On August 16, 2024, GTL submitted its second report in its capacity as receiver of the Debtor to the Canadian Court, wherein GTL apprised the Canadian Court of its findings as of the date thereof, and as set forth herein, and recommended a path forward.  Therein, among other things: (i) GTL advised the Canadian Court that GTL believed that the Debtor's insiders have caused a significant portion of the Property to be relocated to the United States, particularly Indiana and California; and (ii) accordingly, GTL advised the Canadian Court that it intended to commence a proceeding before a United States Bankruptcy Court under chapter 15 of the Bankruptcy Code on

---

[2] On September 16, 2024, an affiliate of Debtor, Kal Freight, Inc., provided GTL subject to the terms of a confidentiality agreement annotations to an Excel Workbook that GTL had provided Debtor that provides Debtor's perspectives on the alleged disposition of a portion of the Debtor's trucks, trailers and reefers.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

behalf of the Debtor, and sought confirmation of GTL's authority as the Foreign Representative to commence such a proceeding in the United States on behalf of the Debtor.

64.      As noted above, on August 19, 2024, the Canadian Court entered the Amended and Restated Receivership Order (i.e., the "ARRO," Exhibit "1" hereto), wherein the Canadian Court specifically empowered GTL as the Foreign Representative as receiver of the Debtor, to commence a case before a United States Bankruptcy Court, under chapter 15 of the Bankruptcy Code, as to the Debtor, in order to further the objectives of the Canadian Proceeding, namely collecting the Property and maximizing value for the benefit of creditors.      The ARRO amended and restated the Receivership Order.

65.      Independent of the ARRO, GTL and I also serve as the Licensed Insolvency Trustee of Debtor in its Canadian bankruptcy proceedings.

66.      The Foreign Representative concurrently submits its Verified Petition to commence this ancillary chapter 15 case before this Court in order to further the central objectives of the Canadian Proceeding.  Specifically, the Foreign Representative brings this chapter 15 case in order to collect and recover the Property or the proceeds from the wrongful sales of the Property, which the Foreign Representative understands Debtor's Management is unlawfully holding in the United States, for the benefit of the Debtor's creditors.

67.      The Foreign Representative also concurrently submits the *Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* (the "Provisional Relief Motion") seeking entry of an order (the "Provisional Relief Order") granting certain provisional relief under section 1519(a) of the Bankruptcy Code, including relief available pursuant to sections 362, 364 and 365 of the Bankruptcy Code with respect to the Debtor and its Property located within the territorial jurisdiction of the United States.  Section 1519 of the Bankruptcy Code permits the Court "[f]rom the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors."  11 U.S.C. § 1519(a).  As set forth more fully in the Provisional Relief

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

Motion, in light of the Debtor's and Management's actions, provisional relief is "urgently needed to protect the assets of the debtor [and] the interests of the creditors."

## JURISDICTION AND VENUE

68.     The Foreign Representative hereby confirms its consent to the entry of final orders or judgments by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

69.     Venue is proper in this district under 28 U.S.C. § 1410 because the Debtor's principal assets in the United States are believed to be located in Orange County and Fontana, California.

70.     The Debtor also has interests in: (i) a legal fees retainer on deposit in this District in which the Debtor has a continuing ownership interest. (ii) causes of action and claims for recovery of the Property or the value of the Property, and (iii) as noted above, Management has represented to me and colleagues that the Debtor has property within this district.  Therefore, Debtor meets the statutory basis under Section 109(a) for the commencement of this chapter 15 in the United States.

## RECOGNITION OF THE ARRO AND BANKRUPTCY REQUESTED

71.     The statutory predicates for the relief requested in the Verified Petition include sections 101(23)-(24), 105(a), 109(a), 1502, 1504, 1507, 1509, 1510, 1512, 1515, 1516, 1517, 1520, 1521 and 1522 of the Bankruptcy Code.

72.     On behalf of the Foreign Representative and as Debtor's receiver and Licensed Insolvency Trustee, I have commenced this chapter 15 case as an ancillary proceeding to the Canadian Proceeding and respectfully submits this Verified Petition contemporaneously with the accompanying documentation required by sections 1504 and 1515 of the Bankruptcy Code.

73.     In this matter, the Debtor's operating locations are in Canada.  The Debtor is headquartered in Canada; the Foreign Representative, tasked with managing the Debtor and its assets under the ARRO and Debtor's bankruptcy are in Canada; the location of the majority of the Debtor's creditors are in Canada; and Canadian law applies to the Canadian Proceeding and all

DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
(949) 241-8967

DECL. OF WENTZELL

US_ACTIVE\127692651\V-4

related disputes.  All of the Debtor's assets are also in Canada, but for the assets that the Debtor's Management and insiders transported into the United States.

74.    The Debtor conducts a substantial amount of business in Canada, as evidenced by its numerous "yards" and jobsites therein.  Accordingly, to the extent this Court finds that the Canadian Proceeding is not a "foreign main proceeding," this Court should find that the Debtor has an "establishment" in Canada under section 1502(2) of the Bankruptcy Code, and recognize the Canadian Proceeding as a "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code.

75.    In addition, I believe that Debtor has its "center of main interests" in Canada as such term is used in section 1502(4) of the Bankruptcy Code. The Debtor is part of an integrated enterprise with its Affiliates, and the Debtor and its affiliates haves substantially more ties to Canada than to any other country, namely:

   a.    Debtor was incorporated under the laws of Canada (specifically, in the Province of Ontario) and has its registered office and headquarters in Abbotsford, British Columbia;

   b.    Debtor and its Affiliates are functionally consolidated, with shared services, expenses, and employees across the corporate group and one of the two sole directors minds and all C-suite personnel are residents of Canada;

   c.    Debtor is believed to conduct regular intercompany cash transfers from its Canadian domiciled accounts;

   d.    All of Debtor's and its Affiliates' business activities are in Canada; and

   e.    Most if not all the Debtor's creditors have the expectation that the Debtor's operations are centered in Canada.

76.    Further, I believe that noticing procedures proposed in the noticing procedures motion also filed today are appropriate in light of the number of creditors, potential creditors, and other parties, all of whom need to be provided with notice of many documents, deadlines and hearings. The Foreign Representative has prepared a form of notice advising of these and related matters.

**PROVISIONAL RELIEF REQUESTED**

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8867

DECL. OF WENTZELL

US_ACTIVE\127692651\V-4

77.     Based on Management and the insiders course of conduct both before and after the appointment of GTL as receiver shown above, it is clear to me that they are not trustworthy and they will continue to brazenly dissipate, hide, convert, and otherwise do all they can do to prevent the Foreign Representative from obtaining possession of the Property or proceeds of sale of the Property.

## SUPPORT FOR THE MOTION AND PROVISIONAL RELIEF

78.     Pending recognition of the Canadian Proceeding, GTL requests provisional relief pursuant to section 1519 of the Bankruptcy Code to, among other things, enjoin any diversion, conversion, sale, or collection efforts against the assets of the Debtor which would frustrate GTL's efforts to maximize value. To the best of my knowledge, I understand that relief granted pursuant to section 1519 requires satisfaction of the standards for injunctive relief, which, as shown below, are satisfied.

**(1)     A substantial likelihood of success on the merits**

79.     For the reasons set forth above including in the Verified Petition and in the Motion, GTL submits that it is likely to prevail in obtaining recognition of the Canadian Proceeding. The Canadian Proceeding is a valid proceeding pending pursuant to the BIA that should be recognized pursuant to chapter 15 of the Bankruptcy Code. As I understand the concept, the center of main interests ("COMI") of the Debtor is located in Canada for the reasons discussed above. GTL as receiver has been performing its duties for approximately two (2) months, and has made substantial progress in its efforts for the benefit of the Debtor's entire creditor body.

80.     Accordingly, there is a substantial likelihood that the Canadian Proceeding and, specifically, the receivership under the ARRO and Debtor's Canadian bankruptcy will be recognized pursuant to chapter 15 of the Bankruptcy Code; and, respectfully, should be recognized as a foreign main proceeding based on my understanding of chapter 15 and similar recognitions of receivership actions pending under the BIA.

81.     If the Court does not find that the Canadian Proceeding is a foreign main proceeding, GTL submits that the facts underlying this chapter 15 proceeding support a finding that the Debtor

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

has an establishment in Canada within the meaning of section 1502(2) of the Bankruptcy Code, and thus there is a substantial likelihood that the Court will recognize the Canadian Proceeding as a foreign non-main proceeding. In the event the Canadian Proceeding is recognized as a foreign main proceeding, GTL also submits that there is a substantial likelihood that the Court will determine that the relief requested is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtor or the interests of the Debtor's creditors pursuant to sections 1519 and 1521 of the Bankruptcy Code.

**(2)    A substantial threat of irreparable injury if the provisional relief is not granted**

82.    To the extent necessary to effectuate and complete its duties set forth in the ARRO and the BIA, GTL continues to seek to liquidate the Debtor and/or oversee operations of the Debtor. Without provisional relief recognizing GTL's authority in the United States per the ARRO and BIA, GTL will be frustrated from fully performing its duties, and the value of the Debtor's assets could be jeopardized.

83.    To permit GTL to fulfill its obligations to the Debtor's receivership estate, the ARRO and BIA provide for substantially similar powers and protections pursuant to Canadian law as those afforded to a chapter 7 trustee under the Bankruptcy Code. Among others, GTL's charge, the stay of all collection activities akin to Bankruptcy Code section 362, and the grant of specific authority for the Receiver to seek international recognition of the ARRO Order provides GTL with vital powers to maximize value for all rightful creditors.

84.    Without recognition and enforcement of the ARRO and BIA to the fullest extent permitted by chapter 15 of the Bankruptcy Code, GTL will be unable to fully discharge its duties to all creditors, specifically including direct negative impact to GTL's ability to maximize value for the Debtor's estate and cause the Receiver and Licensed Insolvency Trustee to expend finite resources to unwind wrongful transactions and to defend potential actions that are intended to be stayed by the ARRO and BIA.

**(3)    That the threatened injury to the movant outweighs any damage the provisional relief might cause to the opponent**

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

DECL. OF WENTZELL

85.    I believe that any threatened injury to the Debtor outweighs any damage the injunctive relief requested in the Emergency Motion for Provisional Relief (pages 5- 6, ¶ 16.c., the "Injunction") on might cause to opponents thereof. The requested relief, if granted, would benefit the Debtor's creditors, as a whole, by facilitating GTL's efforts to maximum value for the assets and an orderly distribution of that value by and through the Canadian Proceeding.

**(4)    That the provisional relief will not disserve the public interest**

86.    Finally, the requested relief will not disserve the public interest. To the contrary, granting the relief serves the public interest because it sets to facilitate a cross-border reorganization that will provide a benefit to all rightful creditors of the Debtor.

87.    For the above stated reasons and to the best of my knowledge, I respectfully submit that the provisional relief sought is necessary and appropriate, in the interests of the public and international comity, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting the requested relief. In the event that the Court finds that the Canadian Proceeding is a foreign main proceeding, the relief requested is still appropriate because the relief may be-and should be-granted in the discretion of the Court.

88.    For the reasons discussed in this Declaration, the Verified Petition and the Recognition Motion, I also believe, and respectfully submit, that recognition of the Canadian Proceeding is the best available option under the circumstances to preserve the value of the Debtor's assets for the benefit of its creditors and stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6ᵗʰ day of September, 2024 at Vancouver, Canada.

Mark Wentzell

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

EXHIBIT 1



SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

AUG 1 9 2024

ENTERED

No. S-244137
Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN

ROYAL BANK OF CANADA

PETITIONER

AND

BIG RIG TRAILERS & LEASING INC., BIG RIG
TIRES & SERVICES INC., and BIG RIG PARTZ INC.

RESPONDENTS

## ORDER MADE AFTER APPLICATION
## AMENDED AND RESTATED RECEIVERSHIP ORDER

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| | ) | |
| MR. JUSTICE MASUHARA | ) | MONDAY, AUGUST 19, 2024 |
| | ) | |
| | ) | |

**ON THE APPLICATION** of Royal Bank of Canada ("**RBC**"), for an Order pursuant to Section 243(1) of the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "**BIA**"), and Section 39 of the *Law and Equity Act*, RSBC 1996 c 253, as amended (the "**LEA**"), appointing Grant Thornton Limited ("**GT**") as Receiver and Manager (in such capacity, the "**Receiver**") without security, of all of the assets, undertakings and property of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. (collectively, the "**Debtors**") acquired for, or used in relation to a business carried on by the Debtors, coming on for hearing this day at Vancouver, British Columbia.

**AND ON READING** the First Affidavit of Tro DerBedrossian sworn June 17, 2024, the Second Affidavit of Tro DerBedrossian sworn July 3, 2024, the Reports to the Court by GT, dated July 3, July 10 and August 16, 2024, and the consent of GT to act as the Receiver; **AND UPON** considering the Order granted by the Honourable Justice Masuhara on June 21, 2024 (the "**Interim Receivership Order**") appointing GT as interim receiver of the Debtors (in such capacity, the "**Interim Receiver**"); **AND ON HEARING** William E.J. Skelly, counsel for the Petitioner, RBC, Catherine Ewasiuk and Eamonn Watson, counsel for GT, and all other counsel as listed on Schedule "A" hereto;

**THIS COURT ORDERS AND DECLARES THAT:**

1.  This amended and restated receivership order amends and restates the order of this Court made in these proceedings on July 5, 2024.

**SERVICE**

2.  The time for service of the Notice of Hearing of Application for this Order and the Application Record is hereby abridged and validated so that this Application is properly returnable today and further service is hereby dispensed.

**APPOINTMENT OF RECEIVER AND CONCLUSION OF INTERIM RECEIVERSHIP**

3.  Pursuant to Section 243(1) of the BIA and Section 39 of the LEA, GT is appointed Receiver and Manager, without security, of all of the assets, undertakings and properties of the Debtors acquired for, or used in relation to a business carried on by the Debtors, including all proceeds (the "**Property**").

4.  Subject to paragraph 26 of this Order, the Interim Receivership Order is hereby terminated. Notwithstanding the termination of the Interim Receivership Order:

    (a)  the Receiver is hereby authorized to perform such incidental duties as may be required to complete the administration of the Interim Receivership Order ("**Incidental Duties**") and shall be entitled to have its fees and disbursements, and the fees and disbursements of its counsel, for attending to such Incidental Duties approved and paid within these receivership proceedings without the necessity of a formal passing or assessment of their accounts; and

    (b)  save and except that any and all acts, steps, agreements, and procedures validly taken, done, or entered into by the Interim Receiver during the pendency of the Interim Receivership Order shall remain valid, binding, and actionable within these Receivership proceedings (the "**Receivership**") and the Interim Receiver shall continue to have the benefit of the provisions of all Orders made in this Receivership, including all approvals, protections, and stays of proceedings in favour of the Interim Receiver in its capacity as Interim Receiver.

**RECEIVER'S POWERS**

5.  The Receiver is empowered and authorized, but not obligated, to act at once in respect of the Property and, without in any way limiting the generality of the foregoing, the Receiver is expressly empowered and authorized to do any of the following where the Receiver considers it necessary or desirable:

    (a)  to take possession of and exercise control over the Property and any and all receipts and disbursements arising out of or from the Property;

    (b)  to receive, preserve and protect the Property, or any part or parts thereof, including, but not limited to, changing locks and security codes, relocation of the Property, engaging independent security personnel, taking physical inventories and placing insurance coverage;

(c)    to manage, operate and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(d)    to compel 1000790856 Ontario Inc.. and any tenant or occupier of 1187 Welford Place, Woodstock, Ontario (the "**Woodstock Yard**") to grant the Receiver and its agents access to the Woodstock Yard for the purpose of assessing the vehicles and trailers located thereon to determine if any such vehicles or trailers form part of the Debtors' estate;

(e)    to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Receiver's powers and duties, including, without limitation, those conferred by this Order;

(f)    to purchase or lease such machinery, equipment, inventories, supplies, premises or other assets to continue the business of the Debtors or any part or parts thereof;

(g)    to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting these amounts, including, without limitation, enforcement of any security held by the Debtors;

(h)    to settle, extend or compromise any indebtedness owing to the Debtors;

(i)    to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to this Order;

(j)    to undertake environmental or workers' health and safety assessments of the Property and operations of the Debtors;

(k)    to initiate, manage and direct all legal proceedings now pending or hereafter pending (including appeals or applications for judicial review) in respect of the Debtors, the Property or the Receiver, including initiating, prosecuting, continuing, defending, settling or compromising the proceedings;

(l)    to market any or all of the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver considers appropriate;

(m)    to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business:

(i)    without the approval of this Court in respect of a single transaction for consideration up to $250,000.00 provided that the aggregate consideration for all such transactions does not exceed $2,000,000.00; and

(ii)   with the approval of this Court in respect of any transaction in which the individual or aggregate purchase price exceeds the limits set out in subparagraph (i) above,

and in each such case notice under Section 59(10) of the *Personal Property Security Act*, RSBC 1996, c 359 shall not be required;

(n)   to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers, free and clear of any liens or encumbrances;

(o)   to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver considers appropriate on all matters relating to the Property and the Receivership, and to share information, subject to confidentiality terms as the Receiver considers appropriate;

(p)   to register a copy of this Order and any other Orders in respect of the Property against title to any of the Property;

(q)   to apply for any permits, licences, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if considered necessary or appropriate by the Receiver, in the name of the Debtors;

(r)   to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limitation, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

(s)   to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have;

(t)   without limiting paragraph 5(r) hereof, take such steps and execute, issue and endorse such documents as may be necessary or desirable to cause the Debtors, or any of them, to make an assignment of all their property for the general benefit of their creditors pursuant to Section 49 of the BIA;

(u)   to commence one or more foreign legal proceedings to further the objectives of this proceeding, including by way of example and not limitation, ancillary receiverships in the United States of America, proceedings under the Model Law on Cross-Border Insolvency (including Chapter 15 of the United States Bankruptcy Code, Title 11, United States Code, 11 U.S.C. Section 1501 et seq), petitions under Title 11, United States Code, Chapters 7 and 11, as well as any other foreign legal proceedings wherever required to be filed by the Receiver in its judgment to pursue recovery of the Debtors' Property; and

(v)   to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations,

and in each case where the Receiver takes any such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined below), including the Debtors, and without interference from any other Person.

- 5 -

## DUTY TO PROVIDE ACCESS AND CO-OPERATION TO THE RECEIVER

6.      Each of (i) the Debtors; (ii) all of the Debtors' current and former directors, officers, employees, agents, accountants, legal counsel and shareholders, and all other persons acting on its instructions or behalf; and (iii) all other individuals, firms, corporations, governmental bodies or agencies, or other entities having notice of this Order, which shall include insurance agencies and insurance brokers (collectively, "**Persons**" and each a "**Person**") shall forthwith advise the Receiver of the existence of any Property in such Person's possession or control, shall grant immediate and continued access to the Property to the Receiver (including any Property located at the Woodstock Yard), and shall deliver all such Property (excluding Property subject to liens the validity of which is dependent on maintaining possession) to the Receiver upon the Receiver's request.

7.      All relevant Persons shall immediately provide the Receiver with access to the Debtors' ADP account number(s), ADP account login information, and ADP contact person(s), and provide access to and/or deliver to the Receiver the payroll records for all of the employees of the Debtors so the Receiver can issue Records of Employment to the employees of the Debtors.

8.      All Persons, other than governmental authorities, shall forthwith advise the Receiver of the existence of any books, documents, securities, contracts, orders, corporate and accounting records, and any other papers, records and information of any kind related to the business or affairs of the Debtors, and any computer programs, computer tapes, computer disks, or other data storage media containing any such information (collectively, the "**Records**") in that Person's possession or control. Upon request, governmental authorities shall advise the Receiver of the existence of any Records in that Person's possession or control.

9.      Upon request, all Persons shall provide to the Receiver or permit the Receiver to make, retain and take away copies of the Records and grant to the Receiver unfettered access to and use of accounting, computer, software and physical facilities, provided however that nothing in paragraphs 7, 8, or 9 of this Order shall require the delivery of Records, or the granting of access to Records, which may not be disclosed or provided to the Receiver due to solicitor client privilege or statutory provisions prohibiting such disclosure.

10.     If any Records are stored or otherwise contained on a computer or other electronic system of information storage, whether by an independent service provider or otherwise, all Persons in possession or control of such Records shall forthwith give unfettered access to the Receiver for the purpose of allowing the Receiver to recover and fully copy all of the information contained therein whether by way of printing the information or making copies of computer disks or such other manner of retrieving and copying the information as the Receiver in its discretion deems expedient, and shall not alter, erase or destroy any Records without the prior written consent of the Receiver. Further, for the purposes of this paragraph, all Persons shall provide the Receiver with all such assistance in gaining immediate access to the information in the Records as the Receiver may require including, without limitation, providing the Receiver with instructions on the use of any computer or other system and providing the Receiver with any and all access codes, account names and account numbers that may be required to gain access to the information.

80852268

## NO PROCEEDINGS AGAINST THE RECEIVER

11.   No proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

## NO PROCEEDINGS AGAINST THE DEBTORS OR THE PROPERTY

12.   No Proceeding against or in respect of the Debtors or the Property shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Debtors or the Property are stayed and suspended pending further Order of this Court; provided, however, that nothing in this Order shall prevent any Person from commencing a Proceeding regarding a claim that might otherwise become barred by statute or an existing agreement if such Proceeding is not commenced before the expiration of the stay provided by this paragraph and provided that no further step shall be taken in respect of the Proceeding except for service of the initiating documentation on the Debtors and the Receiver.

## NO EXERCISE OF RIGHTS OR REMEDIES

13.   All rights and remedies (including, without limitation, set-off rights) against the Debtors, the Receiver, or affecting the Property, are stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that nothing in this Order shall (i) empower the Receiver or the Debtors to carry on any business which the Debtors is not lawfully entitled to carry on, (ii) affect the rights of any regulatory body as set forth in section 69.6(2) of the BIA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien. This stay and suspension shall not apply in respect of any "eligible financial contract" as defined in the BIA.

## NO INTERFERENCE WITH THE RECEIVER

14.   No Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, without written consent of the Receiver or leave of this Court. Nothing in this Order shall prohibit any party to an eligible financial contract from closing out and terminating such contract in accordance with its terms.

## CONTINUATION OF SERVICES

15.   All Persons having oral or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods and/or services, including without limitation, all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Debtors are restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Receiver, and the Receiver shall be entitled to the continued use of the Debtors' current telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver in accordance with normal payment practices of the Debtors or such other

80852268

practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court.

## RECEIVER TO HOLD FUNDS

16. All funds, monies, cheques, instruments, and other forms of payments received or collected by the Receiver from and after the making of this Order from any source whatsoever including, without limitation, the sale of all or any of the Property and the collection of any accounts receivable, in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into one or more new accounts to be opened by the Receiver (the "**Post-Receivership Accounts**") and the monies standing to the credit of such Post-Receivership Accounts from time to time, net of any disbursements provided for herein, shall be held by the Receiver to be paid in accordance with the terms of this Order or any further order of this Court.

## EMPLOYEES

17. Subject to the employees' right to terminate their employment, all employees of the Debtors shall remain the employees of the Debtors until such time as the Receiver, on the Debtors' behalf, may terminate the employment of such employees. The Receiver shall not be liable for any employee-related liabilities of the Debtors, including any successor employer liabilities as referred to in Section 14.06(1.2) of the BIA, other than amounts the Receiver may specifically agree in writing to pay or in respect of obligations imposed specifically on receivers by applicable legislation, including sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act*, SC 2005, c 47. The Receiver shall be liable for any employee-related liabilities, including wages, severance pay, termination pay, vacation pay, and pension or benefit amounts relating to any employees that the Receiver may hire in accordance with the terms and conditions of such employment by the Receiver.

## PERSONAL INFORMATION

18. Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, SC 2000, c 5 or Section 18(1)(o) of the *Personal Information Protection Act*, SBC 2003, c 63, the Receiver may disclose personal information of identifiable individuals to prospective purchasers or bidders for the Property and to their advisors, but only to the extent desirable or required to negotiate and attempt to complete one or more sales of the Property (each, a "**Sale**"). Each prospective purchaser or bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Sale, and if it does not complete a Sale, shall return all such information to the Receiver, or in the alternative destroy all such information. The purchaser of any Property shall be entitled to continue to use the personal information provided to it, and related to the Property purchased, in a manner which is in all material respects identical to the prior use of such information by the Debtors, and shall return all other personal information to the Receiver, or ensure that all other personal information is destroyed.

## LIMITATION ON ENVIRONMENTAL LIABILITIES

19. Nothing in this Order shall require the Receiver to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the

Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release, or deposit of a substance contrary to any federal, provincial or other law relating to the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination (collectively "**Environmental Legislation**"), provided however that nothing herein shall exempt the Receiver from any duty to report or make disclosure imposed by applicable Environmental Legislation.

20. The Receiver shall not, as a result of this Order or anything done in pursuance of the Receiver's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless the Receiver is actually in possession.

21. Notwithstanding anything in federal or provincial law, the Receiver is not personally liable in that position for any environmental condition that arises or environmental damage that occurred:

   (a) before the Receiver's appointment; or,

   (b) after the Receiver's appointment, unless it is established that the condition arose or the damage occurred as a result of the Receiver's gross negligence or wilful misconduct.

22. Notwithstanding anything in federal or provincial law, but subject to paragraph 17 of this Order, where an order is made which has the effect of requiring the Receiver to remedy any environmental condition or environmental damage affecting the Property, if the Receiver complies with the BIA section 14.06(4), the Receiver is not personally liable for the failure to comply with the order and is not personally liable for any costs that are or would be incurred by any Person in carrying out the terms of the order.

## LIMITATION ON THE RECEIVER'S LIABILITY

23. The Receiver shall incur no liability or obligation as a result of its appointment or the carrying out the provisions of this Order, save and except:

   (a) any gross negligence or wilful misconduct on its part; or

   (b) amounts in respect of obligations imposed specifically on receivers by applicable legislation.

   Nothing in this Order shall derogate from the protections afforded the Receiver by Section 14.06 of the BIA or by any other applicable legislation.

## RECEIVER'S ACCOUNTS

24. The Receiver and its legal counsel, if any, are granted a charge (the "**Receiver's Charge**") on the Property as security for the payment of their fees and disbursements, in each case at their standard rates, in respect of these proceedings, whether incurred before or after the making of this Order. The Receiver's Charge shall form a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, with the exception that the Receiver's Charge:

(a)   shall rank *pari passu* with the Interim Receiver's Charge granted in the Interim Receivership Order; and

(b)   shall be subordinate to:

    (i)   any valid and perfected security interest in the Property which rank ahead of RBC's interest therein (the "**Prior-Ranking Charges**"); and

    (ii)   the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

25.   The Receiver and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Receiver and its legal counsel are referred to a judge of the Supreme Court of British Columbia and may be heard on a summary basis.

26.   Prior to the passing of its accounts, the Receiver shall be at liberty from time to time to apply reasonable amounts, out of the monies in its hands, against its fees and disbursements, including legal fees and disbursements, incurred at the standard rates and charges of the Receiver or its counsel, and such amounts shall constitute advances against its remuneration and disbursements when as and as approved by this Court.

## FUNDING OF THE RECEIVERSHIP

27.   The Receiver is authorized and empowered to borrow by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed $750,000.00 (or such greater amount as this Court may by further Order authorize) at any time, at such rate or rates of interest as the Receiver deems advisable for such period or periods of time as it may arrange, for the purpose of:

(a)   funding the exercise of the powers and duties conferred upon the Receiver by this Order, including interim expenditures; and

(b)   paying amounts owing to the Interim Receiver which are secured by the Interim Receiver's Charge created by paragraph 21 of the Interim Receivership Order and/or the Interim Receiver's Borrowing Charge created by paragraph 24 of the Interim Receivership Order. Notwithstanding the termination of the Interim Receivership Order, the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge shall continue and shall be discharged upon the Interim Receiver filing with the Clerk of the Court a Certificate certifying that all amounts owing pursuant to the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge have been paid in full, thereupon the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge, shall be automatically vacated, of no further force and effect, and shall no longer form a charge on the Property.

The whole of the Property shall be and is charged by way of a fixed and specific charge (the "**Receiver's Borrowings Charge**") as security for the payment of the monies borrowed, together with interest and charges thereon, in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, but subordinate in

priority to (i) the Prior-Ranking Charges, (ii) the Interim Receiver's Charge, and (iii) the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

28.    Neither the Receiver's Borrowings Charge nor any other security granted by the Receiver in connection with its borrowings under this Order shall be enforced without leave of this Court.

29.    The Receiver is authorized to issue certificates substantially in the form annexed as Schedule "B" hereto (the "**Receiver's Certificates**") for any amount borrowed by it pursuant to this Order.

30.    The monies from time to time borrowed by the Receiver pursuant to this Order or any further order of this Court and any and all Receiver's Certificates evidencing the same or any part thereof shall rank on a *pari passu* basis, unless otherwise agreed to by the holders of any prior issued Receiver's Certificates.

## ALLOCATION

31.    Any interested party may apply to this Court on notice to any other party likely to be affected for an order allocating the Receiver's Charge and Receiver's Borrowings Charge amongst the Property.

## SERVICE AND NOTICE OF MATERIALS

32.    The Receiver shall establish and maintain a website in respect of these proceedings at: https://www.grantthornton.ca/service/advisory/creditor-updates/ (the "**Website**") and shall post there as soon as practicable:

   (a)    all materials prescribed by statute or regulation to be made publicly available, including pursuant to Rule 10-2 of the *Supreme Court Civil Rules*, BC Reg 168/2009; and,

   (b)    all applications, reports, affidavits, orders and other materials filed in these proceedings by or on behalf of the Receiver, except such materials as are confidential and the subject of a sealing order or pending application for a sealing order.

33.    Any Person who is served with a copy of this Order and that wishes to be served with any future application or other materials in these proceedings must provide to counsel for each of the Receiver and the Petitioner a demand for notice in the form attached as Schedule "C" (the "**Demand for Notice**"). The Receiver and the Petitioner need only provide further notice in respect of these proceedings to Persons that have delivered a properly completed Demand for Notice. The failure of any Person to provide a properly completed Demand for Notice releases the Receiver and the Petitioner from any requirement to provide further notice in respect of these proceedings until such Person delivers a properly completed Demand for Notice.

34.    The Receiver shall maintain a service list identifying all parties that have delivered a properly completed Demand for Notice (the "**Service List**"). The Receiver shall post and maintain an up-to-date form of the Service List on the Website.

35.    Any interested party, including the Receiver, may serve any court materials in these proceedings by facsimile or by emailing a PDF or other electronic copy of such materials to the numbers or addresses, as applicable, set out on the Service List. Any interested party,

including the Receiver, may serve any court materials in these proceedings by mail to any party on the Service List that has not provided a facsimile number or email address, and materials delivered by mail shall be deemed received five (5) days after mailing.

36.    Notwithstanding paragraph 32 of this Order, service of the Application and any affidavits filed in support shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, RSC 1985, c C-50 and its regulations for the Federal Crown and the *Crown Proceedings Act*, RSBC 1996, c 89 in respect of the British Columbia Crown.

37.    The Receiver and its counsel are authorised to serve or distribute this Order, any other orders and any other materials as may be reasonably required in these proceedings, including any notices or other correspondence, by forwarding copies by facsimile or by email to the Debtors' creditors or other interested parties and their advisors. For greater certainty, any such distribution or service shall be deemed to be in satisfaction of any legal or juridical obligation and notice requirements within the meaning of clause 3(c) of the *Electronic Commerce Protection Regulations*.

## GENERAL

38.    Any interested party may apply to this Court to vary or amend this Order on not less than seven (7) clear business days' notice to the Service List and to any other party who may be affected by the variation or amendment, or upon such other notice, if any, as this Court may order.

39.    The Receiver may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

40.    Nothing in this Order shall prevent the Receiver from acting as a trustee in bankruptcy of the Debtors.

41.    This Court requests the aid, recognition and assistance of any court, tribunal, regulatory or administrative body having jurisdiction, wherever located, including without limitation in Canada, the State of California, and all other States in the United States of America, to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order. All such courts, tribunals and regulatory and administrative bodies are respectfully requested to make such orders and to provide such assistance to the Receiver, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Receiver and its agents in carrying out the terms of this Order.

42.    The Receiver is authorized and empowered to apply to any court, tribunal or regulatory or administrative body, wherever located, for recognition of this Order and for assistance in carrying out the terms of this Order and the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

43.    The Petitioner shall have its costs of this motion, up to and including entry and service of this Order, on a full indemnity basis to be paid by the Receiver from the Debtors' estate with such priority and at such time and amount as this Court may determine.

80852268

44.    Endorsement of this Order by counsel appearing on this application other than the Petitioner is dispensed with.

THE FOLLOWING PARTIES APPROVE OF THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

APPROVED BY:

William E.J. Skelly, lawyer for the Petitioner,
Royal Bank of Canada

BY THE COURT

DISTRICT REGISTRAR

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED: AUG 2 7 2024

Authorized Signing Officer

ANSON WONG



80852268

## SCHEDULE "A"

(List of Counsel)

| Name of Counsel | Party Represented |
|---|---|
| William E.J. Skelly<br>Jess R. Reid | The Petitioner, Royal Bank of Canada |
| Catherine Ewasiak<br>Eamonn Watson | The Proposed Receiver, Grant Thornton Limited |
| Brian Hicks | Mitsubishi HC Capital Canada Inc. |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

80852268

## SCHEDULE "B"

### RECEIVER CERTIFICATE

CERTIFICATE NO. _____

AMOUNT        $ _____

1.    THIS IS TO CERTIFY that Grant Thornton Limited, the Receiver and Manager (the "**Receiver**") of all of the assets, undertakings and properties of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. acquired for, or used in relation to a business carried on by the Debtors, including all proceeds thereof (collectively, the "**Property**") appointed by Order of the Supreme Court of British Columbia and/or the Supreme Court of British Columbia (In Bankruptcy and Insolvency) (the "**Court**") dated the 5th day of July, 2024 (the "**Order**") made in SCBC Action No. _____ has received as such Receiver from the holder of this certificate (the "**Lender**") the principal sum of $ _____, being part of the total principal sum of $ _____ which the Receiver is authorized to borrow under and pursuant to the Order.

2.    The principal sum evidenced by this certificate is payable on demand by the Lender with interest thereon calculated and compounded monthly not in advance on the _____ day of each month after the date hereof at a notional rate per annum equal to the rate of _____ per cent above the prime commercial lending rate of _____ from time to time.

3.    Such principal sum with interest thereon is, by the terms of the Order, together with the principal sums and interest thereon of all other certificates issued by the Receiver pursuant to the Order or to any further order of the Court, a charge upon the whole of the Property, in priority to the security interests of any other person, but subject to (i) any valid and perfected security interest in the Property which rank ahead of RBC's interest therein, (ii) the priority of the charges set out in the Order, and (iii) in the *Bankruptcy and Insolvency Act*, and the right of the Receiver to indemnify itself out of the Property in respect of its remuneration and expenses.

4.    All sums payable in respect of principal and interest under this certificate are payable at the main office of the Lender at _____.

5.    Until all liability in respect of this certificate has been terminated, no certificates creating charges ranking or purporting to rank in priority to this certificate shall be issued by the Receiver to any person other than the holder of this certificate without the prior written consent of the holder of this certificate.

6.    The charge securing this certificate shall operate to permit the Receiver to deal with the Property as authorized by the Order and as authorized by any further or other order of the Court.

80852268

7.      The Receiver does not undertake, and it is not under any personal liability, to pay any sum under this Certificate in respect of which it may issue certificates under the terms of the Order.

DATED the _____ day of _____, 2024.

Grant Thornton Limited, solely in its capacity as Receiver and Manager of the Property, and not in its personal capacity


Per:
Name:
Title:

80852268

## SCHEDULE "C"

**Demand for Notice**

TO:         **Royal Bank of Canada**
            c/o MLT Aikins LLP
            Attention: William E.J. Skelly
            Email: wskelly@mltaikins.com

AND TO:     **Grant Thornton Limited**
            c/o Dentons Canada LLP
            Attention: Jordan Schultz
            Email: jordan.schultz@dentons.com

Re:         **In the matter of the Receivership of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc.**

I hereby request that notice of all further proceedings in the above Receivership be sent to me in the following manner:

    1. By email, at the following address (or addresses):

        _____

        OR

    2. By facsimile, at the following facsimile number (or numbers):

        _____

        OR

    3. By mail, at the following address:

        _____

Name of Creditor: _____

Name of Counsel (if any): _____

Creditor's Contact Address: _____

_____

_____

Creditor's Contact Phone Number: _____

No. S-244137
Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN:

ROYAL BANK OF CANADA

PETITIONER

AND:

BIG RIG TRAILERS & LEASING INC., BIG RIG
TIRES & SERVICES INC., and BIG RIG PARTZ INC.

RESPONDENTS

AMENDED AND RESTATED
RECEIVERSHIP ORDER

Dentons Canada LLP
20th Floor – 250 Howe Street
Vancouver, BC  V6C 3R8
Attention:  Jordan Schultz

80852268

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 4675 MacArthur Court, Suite 1250, Newport Beach, CA 92660.

A true and correct copy of the foregoing document, entitled (*specify*) **DECLARATION OF MARK WENTZELL IN SUPPORT OF: (A) VERIFIED PETITION FOR: (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE AND (B) PROVISIONAL RELIEF**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below.

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 19, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL:** On (*date*) September 19, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) September 19, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than the next business day after the document is filed.

Chambers of the Hon. Wayne Johnson
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 384
Riverside, CA 92501-3819

☒ Marked "Judge's Copy" with exhibits tabbed & NEF or LOU receipt behind
☒ To the Judge's Chambers
☒ By ~~Messenger or~~ FedEx within 24 hours of filing

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 19, 2024 | Kathleen Cwik | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case No. 6:24-bk-11010-SC

**F 9013-3.1.PROOF.SERVICE**

June 2012

127855075\V-1