JESS R. BRESSI (SBN 110264)
DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
Tel: (949) 241-8967
Email: jess.bressi@dentons.com

Attorneys for Plaintiff, Grant Thornton Limited,
acting solely in its capacities as Receiver, Licensed
Insolvency Trustee, and Foreign Representative of Big
Rig Trailers & Leasing Inc., a Canadian corporation

DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
(949) 241-8967

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re BIG RIG TRAILERS & LEASING INC., a Canadian corporation,<br><br>Debtor. | BK Case No.: 6:24-bk-15309-MH<br><br>Chapter 15<br><br>Adv. Case No.: |
| GRANT THORNTON LIMITED, ACTING SOLELY IN ITS CAPACITIES AS RECEIVER, LICENSED INSOLVENCY TRUSTEE, AND FOREIGN REPRESENTATIVE OF BIG RIG TRAILERS & LEASING INC., a Canadian corporation,<br><br>Plaintiff,<br>v.<br><br>SPG TRANSPORTATION, INC., a California corporation; RANJIT SINGH, an individual; and KERNAIL SINGH, an individual,<br><br>Defendants. | **COMPLAINT FOR:**<br><br>1. **AVOIDANCE AND RECOVERY OF FRAUDULENT CONVEYANCES;**<br><br>2. **AVOIDANCE OF FRAUDULENT PREFERENCES;**<br><br>3. **UNJUST ENRICHMENT;**<br><br>4. **AVOIDANCE OF TRANSFERS AT UNDERVALUE;**<br><br>5. **AVOIDANCE OF PREFERENCES;**<br><br>6. **TURNOVER OF PROPERTY; AND**<br><br>7. **CONSPIRACY.**<br><br><br>Date Action Filed: March 19, 2025 |

Plaintiff GRANT THORNTON LIMITED, acting solely in its capacities as foreign

receiver, licensed insolvency trustee, and recognized Foreign Representative of Big Rig Trailers

& Leasing Inc., a Canadian corporation ("Plaintiff" or "GTL"), for its Complaint, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the United States District Court for the Central District of California's Standing Order of Reference, Order No. 13-05, filed July 1, 2013.[1] This action is a core proceeding under 28 U.S.C. §§ 157(b)(2)(F) and (P).[2] This action is a proceeding arising in and/or related to the bankruptcy case of In re Big Rig Trailers & Leasing, Inc. ("Debtor"), bearing Case No. 6:24-bk-15309-WJ (MH) (the "Bankruptcy Case"), which is a case under Chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 et seq., (the "Bankruptcy Code").  This Bankruptcy Case is pending in the United States Bankruptcy Court for the Central District of California, Riverside Division (the "Bankruptcy Court" or "Court"). Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the

---

[1] In the alternative, since this Court is an unit of the United States District Court, it  also has derivative diversity and Federal Question jurisdiction. If the Court disagrees and concludes it does not have original jurisdiction or the Court does not wish to exercise its jurisdiction, Plaintiff requests that this Court reverse the reference of this case to it pursuant to Paragraph 4 of Standing Order of Reference and transfer the case to the District Court.  In general, there is jurisdiction under the U.S. Constitution, Art. III, §2 as federal judicial power extends to "Controversies  . . . . between . . . . a State, or the Citizens thereof, and foreign States, Citizens or Subjects." *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.* (2002) 536 U.S. 88, 91. There is Federal Question jurisdiction over this case under 28 U.S.C. §1331 as the Bankruptcy Case is a Foreign Main Proceeding that has been fully recognized by this Court and this action arises under 11 U.S.C. §§1507 and 1509(b) as more fully discussed below. There is also diversity jurisdiction over this case under 28 U.S.C. §1332 as the amount in controversy exceeds $75,000 exclusive of interest and costs and Plaintiff is a Canadian corporation incorporated under the laws of Canada with its principal place of business in Vancouver, British Columbia, Canada, while the defendants are: (i) a California corporation with its principal place of business in this judicial district and (ii) individuals and citizens of the State of California that are believed to be residents of this judicial district, all as more fully discussed below.

[2] In 2005, chapter 15 of the United States Bankruptcy Code replaced former 11 U.S.C. § 304. See Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, §§ 801, 802(d)(3) (2005). In a case of first impression, the United States Court of Appeals for the Fifth Circuit in *Fogerty v. Petroquest Resources, Inc. (In re Condor)*, 601 F.3d 319, 329 (5th Cir. 2010), held that chapter 15 conferred jurisdiction on this Court over the Foreign Representatives' avoidance claims.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

- 2 -

Bankruptcy Court. Defendants are hereby notified that Rule 7008 of the Federal Rules of

Bankruptcy Procedure requires defendants to plead whether consent is given to the entry of a final

order and judgment by the Bankruptcy Court.

2.      Venue properly lies in this judicial district pursuant to 28 U.S.C.

§§1408 to 1410 as Plaintiff's principal United States-based assets are located in this judicial

district, there is a pending proceeding in this judicial district, to wit, the Bankruptcy Case, a

substantial portion of the actions and decisions of the Defendants and their co-conspirators took

place within this judicial district, and venue in this judicial district is in the interests of justice and

convenience of the parties and witnesses.

## NOTICE OF INTENT TO RAISE ISSUES OF FOREIGN LAW

3.      Pursuant to the Federal Rules of Civil Procedure, Rule 44.1, Plaintiff hereby gives

notice of its intent to raise issues of foreign law. Specifically, Plaintiff contends that the

substantive laws of Canada, as cited herein, governs some or all of the parties' disputes.

## PARTIES

4.      Plaintiff is a Canadian corporation organized under the laws of Canada.  Plaintiff

is bringing this action solely in its capacities as the Canadian-court appointed receiver, licensed

insolvency trustee, and recognized Foreign Representative of Debtor Big Rig Trailers & Leasing

Inc., a Canadian corporation.  Plaintiff has been recognized in the Bankruptcy Case as Big Rig's

Foreign Representative and the Bankruptcy Case has been recognized as a Foreign Main

Proceeding.

5.      Big Rig Trailers & Leasing Inc. is a Canadian corporation (i.e., "Debtor" or "Big

Rig"), incorporated pursuant to the Canada Business Corporations Act, R.S.C. 1985, c-44

("CBCA").

DENTONS US LLP
4675 MacARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

COMPLAINT

129012240

6.      Big Rig carried on various lines of business related to commercial trucks and trailers, including resales of new and used semi-trucks and trailers (with an emphasis on new trailers) and leasing trailers to customers in the trucking industry.

7.      Plaintiff is informed and believes, and on that basis alleges that, Defendant SPG TRANSPORTATION, INC. ("SPG") is a vendor, subcontractor, or contractor of the various entities owned or controlled by Mr. Kalvinder Singh (as discussed below) and is a corporation organized and incorporated under with the laws of the State of California.  Plaintiff is informed and believes, and on that basis alleges that Defendant SPG is a trucking company running a freight hauling business and an active DOT registered motor operator under USDOT Number 2881143 and MC Number 966872.

8.      Plaintiff is informed and believes, and on that basis alleges, that Defendants Ranjit Singh and/or Kernail Singh own SPG as its shareholders, are its officers and directors, and are individuals residing in this judicial district.

9.      Plaintiff is informed and believes, and on that basis alleges, that SPG is inadequately capitalized, does not maintain proper corporate formalities, and is the alter ego of Defendants Kernail Singh and Ranjit Singh.   Plaintiff is informed and believes, and on that basis alleges, that SPG was created, in part, to shield from liability the personal assets of Defendants Kernail Singh, Ranjit Singh, and others.  Plaintiff is informed and believes, and on that basis alleges, that SPG is the alter ego of Defendants Kernail Singh, Ranjit Singh, and others and that SPG should be disregarded as a shield from personal liability for Defendants Kernail Singh and Ranjit Singh and others according to proof.

10.      Big Rig is wholly owned by Mr. Kalvinder Singh ("Mr. Singh"), an individual residing in this judicial district in the City of Rancho Cucamonga, California.  Mr. Singh is also a director of Big Rig.  In addition to Big Rig, Mr. Singh owns various other companies in Canada

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

- 4 -

DENTONS US LLP
4675 MacARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

and the United States, including Big Rig Partz Inc. and Big Rig Tires Inc. in Canada and Kal Partz Inc., KVL Tires (formally Kal Tires Inc.), Kal Trailers & Leasing Inc., Kal Freight Inc., and Kal Aviation LLC in the United States (collectively, the "Kal Entities"), which operate similar businesses to Big Rig's in the United States.  The headquarters and "nerve center" of the Kal Entities is located in this judicial district in the City of Fontana, California.

11.    Plaintiff is informed and believes, and on that basis alleges, that each of the decisions made to engage in the transactions that resulted in the Transfers of the Funds (both as defined below) challenged by this lawsuit and the actions to implement the decisions relating to the wrongful conduct alleged in this Complaint were each made in Fontana, California.   Plaintiff is informed and believes, and on that basis alleges, that Mr. Singh conspired with Defendants SPG, Kernail Singh, Ranjit Singh and likely others to cause the wrongful actions alleged in this Complaint to take place.

12.    Plaintiff is informed and believes, and on that basis alleges, that Defendants Ranjit Singh and Kernail Singh are relatives of Mr. Singh. Plaintiff is informed and believes, and on that basis alleges, that Defendants Ranjit Singh and Kernail Singh are both non-arm's length parties to Big Rig and Mr. Singh's other entities and "insiders" of Big Rig under provisions of the Bankruptcy Code (11 U.S.C. §§101(31) and (45)) and applicable law.

13.    Royal Bank of Canada ("RBC") provided various credit facilities to Big Rig, including various facilities for the acquisition of new and used equipment.  As of June 10, 2024, Big Rig was indebted to RBC in the amount of CAD$6,254,033.14 and USD$7,406,183.89 (plus costs and interest accruing thereafter).  Other secured and unsecured creditors of Big Rig and its affiliates are owed tens of millions of dollars over and above what RBC is owed and are also creditors in the Canadian Proceedings.

COMPLAINT

129012240

14.    Big Rig defaulted on its obligations to RBC and other creditors in or around February, 2024.  RBC subsequently conducted an audit of the truck and trailer inventory of Big Rig and determined a number of trailers had gone missing, had been sold without the consent or knowledge of RBC, or had been relocated to the United States at unknown locations.

Background to the Canadian Receivership

15.    On June 21, 2024, the British Columbia Supreme Court (the "Canadian Court") granted an order appointing Plaintiff as Interim Receiver over the assets, undertakings and properties of Big Rig and its affiliates acquired for, or used in relation to, the businesses carried on by Big Rig and its affiliates  (the "Property") in the Canadian Court's Vancouver Registry as Case No. VLC-S-S-S244137 (the "Canadian Proceedings").

16.    On July 5, 2024, the Canadian Court granted an order appointing Plaintiff as Receiver of the Property in the Canadian Proceedings.  The Receivership Order was amended and restated on August 19, 2024 (as amended, the "Receivership Order"). A true and correct copy of the Receivership Order is attached as Exhibit 1.

The Chapter 15 Proceedings

17.    Due to Plaintiff's concerns that certain of the Property was located in the United States, Plaintiff commenced the underlying Chapter 15 proceedings before this Court to obtain an order recognizing Plaintiff and the Receivership Order in the United States and a stay of all proceedings against the Property in the United States, among other relief. More specifically, on September 6, 2024, Plaintiff filed a petition under Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. Section 1501 *et seq.*, for recognition of: (i) Plaintiff GTL as the Foreign Representative of Big Rig, (ii) the Canadian proceedings as Foreign Main Proceedings, and (iii) the court orders and rulings of the Canadian Court.

DENTONS US LLP
4675 MacARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

- 6 -

18.  On September 11, 2024, Plaintiff as the Receiver of Big Rig filed an assignment under section 49 of the Canadian Bankruptcy and Insolvency Act, RSC 1985, c. B-3 ("BIA"), placing Big Rig into the Canadian equivalent of a Chapter 7 bankruptcy in the United States.

19.  On October 17, 2024, the Bankruptcy Court entered as Docket No. 42, its Order Granting Motion of the Foreign Representative for Chapter 15 Recognition (the "Recognition Order").  A true and correct copy of the Recognition Order is attached as Exhibit 2.

**FACTS GIVING RISE TO THIS ACTION**

20.  Plaintiff is informed and believes, and on that basis alleges, that the Kal Entities and Big Rig orchestrated an international lending fraud scheme (the "Scheme") to secure and retain financing from lending institutions in both the United States and Canada.

21.  As noted, Defendant SPG is owned by relatives of Mr. Singh, i.e., Defendants Kernal and Ranjit Singh. When other entities owned by Mr. Singh had insufficient capacity to service their customers, SPG used trucks and trailers owned by other entities service those entities' customers. As part of the Scheme, Plaintiff is informed and believes, and on that, over the course of years, Mr. Singh's various other entities and SPG would transfer cash and other assets to each other to support their respective operations and without regard to paying adequate consideration, who owned the cash collateral and other assets, or the rights of any creditor that held a security interest in the cash or assets.

22.  Plaintiff is informed and believes, and on that basis alleges, that the Scheme involved and was implemented by, among other things, various wrongful actions by Big Rig, other entities owned by Mr. Singh, and Mr. Singh (or agents acting at his direction), all intended to mislead creditors in one way or another.  Plaintiff is informed and believes, and on that basis alleges, that these wrongful actions performed by Big Rig, other entities owned by Mr. Singh, and Mr. Singh (or agents acting at his direction) include: (i) creation and embellishment of financial

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

129012240

DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
(949) 241-8967

records to lenders to represent inflated income to induce the lenders to loan money to both the Kal Entities and Big Rig, (ii) fabrication of fraudulent VIN (as defined below) plates, (iii) switching of VIN plates between vehicles, (iv) alteration of VIN plates, (v) "double pledging" of the same vehicle to more than one lender, often one lender in the United States and another in Canada, to secure additional financing against the same assets from more than one lender, (vi) use of fabricated manufacturer "paper" titles or Manufacturer's Statements of Origin ("MSOs")[3] to vehicles, and (vii) use of mischaracterized VINs from camping trailers to mislead lenders into believing they were obtaining items of collateral worth many times what a camping trailer is worth.

23.     Plaintiff is informed and believes, and on that basis alleges, that Defendant SPG holds a bank account at Wells Fargo Bank, N.A., located in this judicial district that is accessible to and/or under the control of Defendants Ranjit and Kernail Singh.  The below-listed wire transfers from Big Rig and its affiliates' Bank of Nova Scotia bank accounts include the following:

(a)     CAD $483,210 on April 22, 2024;

(b)     CAD $450,000 on May 21, 2024;

(c)     CAD $105,000 on May 21, 2024; and

(d)     CAD $80,000 on May 21, 2024.

---

[3] MSOs are title documents issued by vehicle manufacturers to the manufacturer's dealers and customers to evidence the creation and legal existence of a motor vehicle so it can be titled and sold.  MSOs are also required for the issuance of ownership certificates by governmental agencies such as by California's Department of Motor Vehicles.  However, Plaintiff is informed and believes, and on that basis alleges that no actual vehicles ever existed for the VINs shown in the MSO's that Big Rig paid for and that Texas Trailer is believed to have delivered to the Kal Entities and that the trucks and trailers represented in the MSO's did not actually exist (the "Fake Trucks and Trailers").  Plaintiff is informed and believes, and on that basis alleges that the Kal Entities and Big Rig did this to attempt to induce and to induce lenders to loan funds to the Kal Entities and Big Rig, using the Fake Trucks and Trailers as collateral, and to inflate the amount of current assets on their balance sheets.

1    (collectively the "Transfers")

2    24.    The Transfers total an aggregate sum of CAD $1,118,210 which at current rates of

3    exchange is approximately USD $780,873 (the "Funds").

4    25.    There is no record in Big Rig's books and records nor in any physical inventory of

5    its Property of its receipt of any consideration whatsoever from Defendants in consideration of or

6    exchange for the payment of the Transfers.  Plaintiff has requested that the Funds be returned by

7    SPG but none has been returned.

8

9    **LEGAL BASIS FOR CLAIMS**

10    26.    Plaintiff primarily relies on the Canadian Provincial Fraudulent Conveyance Act,

11    RSBC 1996, Ch. 163 ("FCA"), the Canadian Fraudulent Preference Act, RSC 1996 Ch 164

12    ("FPA"), and sections 95 and 96 of the Canadian BIA for the claims alleged in this Complaint.

13    The Transfers constitute fraudulent conveyances, within the meaning of the FCA

14    27.    To establish that a fraudulent conveyance has occurred under Canadian law,

15    Plaintiff must prove that there was:

16    (a)    a disposition of property; and

17    (b)    an intent to delay, hinder or defraud a creditor.[4]

18    28.    If a fraudulent conveyance is established, then it is void and of no effect against

19    Plaintiff, a person or the person's assignee or personal representative whose rights and obligations

20    are or might be disturbed, hindered, delayed or defrauded, despite a pretense or other matter to the

21    contrary.[5]

22

23    **CLAIMS FOR RELIEF**

24

25

26

27    _____

[4] *Finness Yachting Inc. v Menzies*, 2015 BCSC 1322 at para 18, aff'd 2016 BCCA 360,

28    FCA Section 1.
    [5] FCA Section 1.

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

129012240                                    COMPLAINT

DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
(949) 241-8967

## Count I: AVOIDANCE AND RECOVERY OF FRAUDULENT CONVEYANCES

(Against all Defendants).

29.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

30.     With regards to the first element of the claim, Big Rig disposed of property (i.e., the Funds) as evidenced by the Transfers as alleged above.

31.     As to the second element of the claim, this too is established as the only intent required on the part of a defendant in order to void a transaction under the FCA is the intent to put assets out of the reach of creditors.  No further dishonest or morally blameworthy intent is required. A court can presume the requisite intention if the disposition had the effect of hindering or delaying or defeating creditors.[6]

32.     While under Canadian law intent is a question of fact to be determined based on the whole of the evidence, it can be inferred.  Consistent with American and British law dating back hundreds of years,[7] Canadian courts have established a number of so-called badges of fraud, which, when shown to be present, give rise to a presumption of fraud.  Those include, but are not limited to:

(a)     the state of the debtor's financial affairs at the time of the transaction, including its income, assets, and debts;

(b)     the relationship between the parties to the transfer;

(c)     the effect of the disposition on the assets of the debtor, i.e., whether the transfer effectively divests the debtor of a substantial portion or all of his assets;

---

[6] *Abakhan & Associates Inc. v. Braydon Investments Ltd.*, 2009 BCCA 521 ("*Braydon*") at para 73.
[7] The history of badges of fraud can be traced back to the 16th century in England with the Statute of Elizabeth, 13 Eliz., ch. 5 (1571). See also *Twyne's Case* (1602) 3 Coke 80b, 76 Eng. Rep. 809.

COMPLAINT

129012240

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

(d)    the timing of the transfer relative to notice of debts or claims against the debtor; and

(e)    whether the transferee gave valuable consideration for the transfer.[8]

33.    Merely proving that the effect of the transfer is to hinder or delay creditors or others is not, as a matter of law, sufficient.[9]

34.    Evidence of presumptively fraudulent actions has the effect of shifting the burden to the defendants to explain why their conduct is not caught by the legislation.[10]

35.    A number of badges of fraud are present in this action, namely:

(a)    the Transfers were made to Defendant SPG, a likely non-arm's length person;

(b)    Defendant SPG's owners, officers and directors are biological relatives of Mr. Singh, "insiders" and non-arm's length persons;

(c)    At the times of the Transfers, the RBC loans and other obligations due innocent creditors were in default and there were actual or potential liabilities facing Big Rig as the company was insolvent or on the eve of insolvency, having defaulted on the RBC Debts and other debts in the first quarter of 2024 (shortly before the dates of the Transfers, which were made between April 22, 2024 and May 21, 2024); and

(d)    there was no consideration provided by Defendant SPG in exchange for the Transfers and there is no documentation in support of the Transfers in Big Rig's books and records.

---

[8] *Pacific Wagondepot Ltd. v. Hudson West Development Ltd.*, 2019 BCSC 909 ("*Pacific Wagondepot*") at para 15.
[9] *Mawdsley v Meshen*, 2012 BCCA 91, at para 7.
[10] *Wu v Gu*, 2020 BCSC 39 ("*Wu*") at para 96.

COMPLAINT

129012240

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

36.    The Transfers are not saved by section 2 of the FCA as they were not made for good consideration, nor were they made in good faith. Indeed, the Transfers appear to have been made to Defendant SPG for no consideration at all.

37.    Plaintiff submits that the Transfers constitute a fraudulent conveyance of property made with the intent to delay, hinder or defraud creditors and are therefore void and of no effect against Plaintiff.

38.    Plaintiff is informed and believes, and on that basis alleges, that based on the foregoing, Plaintiff may avoid the Transfers and recover the equivalent value of said fraudulent transfers for the benefit of Big Rig's creditors from the respective defendant/transferee pursuant to the Canadian laws cited above.

**Count II: AVOIDANCE AND RECOVERY OF FRAUDULENT PREFERENCES** (Against all Defendants).

39.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.  In the alternative, the Transfers constitute a fraudulent preference, within the meaning of the FPA.

40.    To prove that a transfer of property constitutes a fraudulent preference, it must be shown that the transferor:

(a)    be in insolvent circumstances, unable to pay their debts in full, or on the eve of insolvency; and

(b)    intended to defeat, hinder, delay or prejudice creditors or some of them or intended to give the transferee preference over others.[11]

---

[11] FPA Section 3.

COMPLAINT

129012240

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

41.    A dual intent to give preference on behalf of the transferor and to receive a preference by the transferee is required. [12]

42.    Plaintiff submits that the Transfers were made with the intent to give Defendant SPG preference over other creditors and with the intent to defeat, hinder, delay or prejudice creditors or some of them, at a time when the Big Rig was or was on the eve of insolvency and are therefore void and of no effect as against Plaintiff.

43.    Plaintiff further submits that Defendant SPG also intended to receive the payments in preference to other creditors of Big Rig, given its likely status as a non-arm's length or insider party from Big Rig, and the presence of numerous badges of fraud.

44.    Plaintiff is informed and believes, and on that basis alleges that, based on the foregoing, Plaintiff may avoid the Transfers and recover the equivalent value of said fraudulent preferences for the benefit of Big Rig's creditors from the respective defendant/transferee pursuant to the Canadian laws cited above.

**Count III: UNJUST ENRICHMENT** (Against all Defendants).

45.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.  Defendants SPG, Ranjit Singh, and Kernail Singh have been unjustly enriched by the Transfers.

46.    A claim for unjust enrichment requires that Plaintiff applicant demonstrate:

(a)    enrichment on the part of the defendant;

(b)    a corresponding deprivation on the part of the plaintiff; and

---

[12] *Boale, Wood & Company Ltd. v. Whitmore* ("*Boale*"), 2017 BCSC 1917 at para 86

COMPLAINT

129012240

DENTONS US LLP
4675 MacARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

(c)    the absence of a juristic reason[13] for the enrichment.[14]

47.    Defendants SPG, Ranjit Singh, and Kernail Singh have enjoyed enrichment by the Transfers and Plaintiff and the creditors of Big Rig have suffered a corresponding deprivation in that the Funds are not available for distribution.

48.    The determination of whether there is an absence of a juristic reason is a two-step process under Canadian law. First, if the applicant demonstrates the absence of an established category of juristic reason such as a contract, a disposition of law, a donative intent or some other valid common law, equitable, or statutory obligation, a prima facie case under the juristic reason component of the analysis is made out.  However, the prima facie case is rebuttable if the defendant shows good reason why recovery should be denied in the particular circumstances of the case, taking into consideration the reasonable expectations of the parties and public policy considerations.[15]

49.    There is no evidence of any legal contract, donative intent or other valid common law, equitable or statutory obligation for which the Transfers were made. Indeed, the Transfers appear to have been made for no consideration at all.

50.    There is therefore no juristic reason for Defendants SPG's, Ranjit Singh's, and Kernail Singh's enrichment and Plaintiff is entitled to restitution and an order requiring that Defendants SPG, Ranjit Singh, and Kernail Singh repay the Funds.

51.    Plaintiff is informed and believes, and on that basis alleges that, based on the foregoing, Plaintiff may recover the Transfer and recover the equivalent value of said unjust

---

[13] Under Canadian law a "juristic reason" is a reason/justification based upon law for the enrichment of one person at the detriment of another. If there is a juristic reason for an enrichment then it is not "unjust" and the court will not grant a remedy on the basis of unjust enrichment. *Kerr v. Baranow*, (2011) S.C.J. No. 10 at para. 40.

[14] *Boale* at para 97, quoting *Garland v. Consumers' Gas Co.* ("*Garland*"), 2004 SCC 25, at para 30.

[15] *Boale* at para 100, quoting *Garland* at paras 44-46.

COMPLAINT

129012240

enrichment for the benefit of Big Rig's creditors from the respective defendant/transferee pursuant to the Canadian laws cited above.

**Count IV: UNDERVALUE TRANSFERS** (Against all Defendants).

52.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.  In the alternative, the Transfers are transfers at undervalue per Section 96 of the BIA

53.     On application by a bankruptcy trustee such as Plaintiff , a court may declare that a transfer at undervalue is void as against or order that a party to the transfer or any other person who is privy to the transfer, or all those persons, pay to the estate the difference between the value of the consideration received by the debtor and the value of the consideration given by the debtor if:

> (a)     the party was dealing at arm's length with the debtor and

> > (i)     the transfer occurred during the period that begins on the day that is one year before the date of the initial bankruptcy event and that ends on the date of the bankruptcy;

> > (ii)     the debtor was insolvent at the time of the transfer or was rendered insolvent by it; and

> > (iii)     the debtor intended to defraud or delay a creditor; or

> (b)     the party was not dealing at arm's-length with the debtor and

> > (i)     the transfer occurred during the period that begins on the day that is one year before the date of the initial bankruptcy event and that ends on the date of the bankruptcy.[16]

54.     A "transfer at undervalue" is defined in the BIA as a disposition of property or provision of services for which no consideration is received by the debtor or for which the

---

[16] BIA section 96(1).

DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
(949) 241-8967

- 15 -

129012240

DENTONS US LLP
4675 MacARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

consideration received by the debtor is conspicuously less than the fair market value of the consideration given by the debtor.[17]

55.     As the first transfer was made on April 22, 2024 and Big Rig made an assignment into bankruptcy on September 11, 2024, the Transfers occurred within the time one-year period specified under sections 96(1)(a)(i) and 96(1)(b)(i) of the BIA.

56.     Big Rig was insolvent at the time of the Transfers within the meaning of section 2 of the BIA.

57.     As Defendants SPG, Ranjit Singh, and Kernail Singh are not arm's-length parties to Big Rig, under the provisions of the BIA there is no further requirement for Plaintiff to prove that the Transfers were made with the intent to defraud, defeat or delay Big Rig's creditors.

58.     The BIA does not define an arm's-length transaction. It does however, stipulate that "it is a question of fact whether persons not related to one another were at a particular time dealing with each other at arm's length.[18]

59.     Overall, in determining whether parties' dealings were at arm's length, the court must assess whether they reflect "ordinary commercial dealing between parties acting in their separate interests". [19]

60.     Canadian court's generally examine the following criteria in determining whether unrelated persons are dealing at arm's length:

(a)     whether there was a common mind that directed the bargaining for both parties to a transaction;

(b)     whether the parties to a transaction were acting in concert without separate

---

[17] BIA section 2.
[18] BIA section 4(4).
[19] *Doyle Salewski Inc. v. Scott,* 2019 ONSC 5108 ("*Doyle*"), at para 203 (upheld by Court of Appeal and the SCC).

COMPLAINT

129012240

interests; and

(c)    whether there was *de facto* control.[20]

61.    *De facto* control of one party by another is only one of the circumstances that grounds a finding of a non-arm's length relationship. Parties are also not at arm's length where they act in concert without separate interests, or where there is a common mind directing the bargaining of both parties to the transaction. Overall, the court must consider all of the evidence with respect to the parties' dealings to determine whether they demonstrated independence of thought and purpose and the adverse economic interest and good faith negotiating that characterizes ordinary commercial transactions.[21]

62.    Plaintiff is informed and believes, and on that basis alleges that Defendant SPG, Defendant Ranjit Singh, Defendant Kernail Singh, Mr. Singh, and the Kal Entities acted in concert with a common goal of defrauding Big Rig's creditors, are blood relatives, are "insiders" of Big Rig and the Kal Entities, and that therefore, Defendants SPG, Ranjit Singh, and Kernail Singh are non-arm's length parties.

63.    In the event Defendants SPG, Ranjit Singh, and Kernail Singh are found to be arm's-length parties to Big Rig, which Plaintiff expressly denies, then only Big Rig's, as transferor, intent is relevant in an application made under section 96(1) of the BIA. [22]

64.    For the reasons set out above, and in light of the presence of a number badges of fraud, Plaintiff submits that it is clear Big Rig intended to defraud, delay or defeat its creditors by making the Transfers and the Funds should be returned to the Plaintiff forthwith.

65.    Plaintiff is informed and believes, and on that basis alleges that, based on the foregoing, Plaintiff may avoid the Transfer and recover the equivalent value of said undervalue

---

[20] *Golden Oaks* at para 127.
[21] *Doyle* at para 357, *Golden Oaks* at para 128.
[22] *Boale* at para 86.

COMPLAINT

129012240

DENTONS US LLP
4675 MacARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

transfers for the benefit of Big Rig's creditors from the respective defendant/transferee pursuant to the Canadian laws cited above.

**Count V: PREFERENTIAL TRANSFERS** (Against all Defendants).

66.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.  In the alternative, the Transfers constitute a preference under section 95 of the BIA.

67.    A transfer of property made, a provisions of services made, a charge on property made, a payment made, an obligation incurred or a judicial proceeding taken or suffered by an insolvent person in favor of a creditor who is not dealing at arm's length with the insolvent person in trust for that creditor, that has the effect of giving that creditor a preference over another creditor is void as against the trustee if it is made, incurred, taken or suffered, as the case may be, during the period beginning on the day that is 12 months before the date of the initial bankruptcy event and ending on the date of the bankruptcy.[23]

68.    Intent to give a preference is not required under Section 95(1)(b) if a preference arises in fact between non-arm's length parties, it is simply void as against the trustee.[24]

69.    For the same reasons as stated above, Defendants SPG, Ranjit Singh, and Kernail Singh cannot be considered an arm's-length party to Big Rig and is therefore caught by section 96(1)(b) of the BIA.

70.    Plaintiff submits that the Transfers are payments made in favor of Defendants SPG, Ranjit Singh, and Kernail Singh, non-arm's length creditors, giving Defendants SPG, Ranjit Singh, and Kernail Singh preference over other creditors and made within 12 months before the date of the initial bankruptcy date, being September 11, 2024, and should be returned to Plaintiff forthwith.

---

[23] BIA Section 96(1)(b).
[24] *Doyle Salewski Inc. v. Brunette*, 2022 Carswell Ont. 15301

COMPLAINT

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

129012240

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

71.  Plaintiff is informed and believes, and on that basis alleges, that based on the foregoing, Plaintiff may avoid the Transfers and recover the equivalent value of said preferential transfers for the benefit of Big Rig's creditors from the respective defendant/transferee pursuant to the Canadian laws cited above.

**Count VI: TURNOVER OF PROPERTY/CONVERSION** (Against all Defendants).

72.  Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

73.  Debtor owns a 2023 Freightliner Cascadia semi-truck tractor assigned Vehicle Identification Number 3AKJHHDR1PSNV9440 (the "Truck").  RBC provided financing for Debtor to acquire the Truck.  Plaintiff is entitled to use, sell or lease the Truck in accordance with the provisions of Bankruptcy Code §363.

74.  Plaintiff is informed and believes, and on that basis alleges that, Defendant SPG currently has the Truck in its possession, custody or control, or, during the last two years, had the Truck in its possession, custody or control and later disposed of the Truck.  Plaintiff is informed and believes, and on that basis alleges that after Defendant SPG obtained possession of the Truck, Defendant SPG registered the Truck in California and acquired California license plate number YP50916.  Plaintiff is informed and believes, and on that basis alleges that Defendant SPG registered the Truck in California and acquired California license plate number YP5091 without disclosing to the California Department of Motor Vehicles that the Truck was collateral for a loan from RBC and was owned by Debtor.

75.  Plaintiff is informed and believes, and on that basis alleges that, Defendant SPG did not pay Debtor for the Truck.  Plaintiff is informed and believes, and on that basis alleges that, Debtor had and has prior and superior rights of ownership in and to the Truck.

COMPLAINT

129012240

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

76.    Plaintiff is informed and believes, and on that basis alleges that, the Truck has more than inconsequential value and has a current value of approximately $105,000.00, based on current auction prices and the current rate of exchange of Canadian to United States dollars. Plaintiff is informed and believes, and on that basis alleges that, when Defendant SPG obtained possession of the Truck it was worth more than $105,000.00, that Defendant SPG has used the Truck in its business, and has since driven the Truck many tens or even hundreds of thousands of miles resulting in the reduction of the Truck's value and the overall depreciation of the Truck.

77.    Plaintiff is entitled to a judgment compelling Defendant SPG to either: (i) turnover and return the Truck to Plaintiff plus pay for all decreases in value since Defendant acquired possession of the Truck or (ii) a monetary judgment for the value of the Truck at the time Defendant obtained possession of the Truck.

**Count VII: LIABILITY FOR CONSPIRACY AND AIDING AND ABETTING WRONGDOING** (Against all Defendants).

78.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

79.    To impose liability upon Defendants SPG, Ranjit Singh, and/or Kernail Singh for conspiracy under Canadian law, Plaintiff must prove the following elements:[25]

(i)    An agreement between two or more persons to act unlawfully, which constitutes a common design.  Participation is the essence of conspiracy, and mere knowledge that a conspiracy exists or acquiescence in the agreement will not suffice.

(ii)    Conspiracy is an intentional tort, which applies where the parties have agreed to act in a certain way, for a certain purpose, and with a certain intent.  The parties accused of a civil conspiracy must know what they are doing; they must be willing

---

[25] *ICBC v. Atwal,* 2010 BCSC 338, aff'd 2012 BCCA 12.

COMPLAINT

129012240

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

participants acting as a consequence of their agreement to do so, desiring the end

that is to be achieved (committing unlawful acts).

(iii)    The agreement must consist of a plan to engage in "unlawful conduct", which in

the context of civil conspiracy includes crime, tort, breach of contract, or breach of

statute.

(iv)    Damage is an essential element of tortious conspiracy, and the plaintiff must

establish the defendants committed acts which furthered the conspiracy and caused

it damage. As alleged above, each of these elements is present in this case.

80.    A conspiracy may be inferred from circumstances, including the nature of the acts

done, the relationships between the parties, and the interests of the alleged co-conspirators.

Plaintiff is not required to prove that Defendants SPG, Ranjit Singh, and/or Kernail Singh

personally committed a wrongful act or that they knew all the details of the agreement or the

identities of all the other participants.

81.    Based on all of the above allegations that are incorporated herein by this reference,

including, but limited to, the non-arm's length and insider relationships of Defendants SPG,

Ranjit Singh, and/or Kernail Singh to Big Rig, Mr. Singh, and Mr.  Singh's other entities, the

existence and implementation of the Scheme, the Transfers, the fraud on Big Rig's creditors and

otherwise, Defendants SPG, Ranjit Singh, and/or Kernail Singh and any other co-conspirators that

come to light through discovery should be each found to be jointly and severally liable for the

wrongdoing alleged in this action and the damages suffered.

82.    Independently, to impose liability upon Defendants SPG, Ranjit Singh, and

Kernail Singh for aiding and abetting, Plaintiff must prove the following: (i) that Defendants

SPG, Ranjit Singh, and/or Kernail Singh Defendants knew that the fraudulent or preferential

transfers alleged above were going to be paid by Big Rig, (ii) that Defendants SPG, Ranjit Singh,

and/or Kernail Singh gave substantial assistance or encouragement to Big Rig or other entities owned or controlled by Mr. Singh relating to some aspect of the Scheme and/or the Transfers; and (iii) that Defendants SPG's, Ranjit Singh's, and/or Kernail Singh's conduct was a substantial factor in causing harm to Plaintiff.  As alleged above, each of these elements is present in this case.

## RESERVATION OF RIGHTS

83.     Plaintiff reserves the right to amend this Complaint to include, among other things, (i) further information regarding the Transfers, (ii) additional transfers, (iii) modifications of and revisions to Defendants' names, (iv) additional defendants, and (v) additional claims for relief, that may become known to Plaintiff at any time during this adversary proceeding through formal discovery or otherwise, and for the amendments to relate back to this Complaint.

84.     Plaintiff reserves the right to bring all other claims for relief that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity. Additionally, nothing contained in this Complaint shall be construed as a waiver of Plaintiff's right to object to any proofs of claim that may be filed by Defendants in the Canadian Proceedings or the Bankruptcy Case. Accordingly, Plaintiff reserves the right to object, on any and all grounds, to any proofs of claim filed by Defendants.

## PRAYER FOR RELIEF

NOW, THEREFORE, Plaintiff GTL prays for judgment and relief against Defendants, jointly and severally, as follows:

(A)     On Count I, for a judgment and/or order that the Transfers are each avoidable fraudulent conveyances under applicable Canadian provincial law;

(B)     On Count II, for a judgment and/or order that the Transfers are each avoidable fraudulent preferences under applicable Canadian law;

(C)     On Count III, for a judgment and/or order that the Defendants were unjustly

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

129012240

enriched by the Transfers under applicable Canadian law;

(D)     On Counts IV, for a judgment and/or order that the Transfers are each avoidable transfers at undervalue under applicable Canadian law;

(E)     Count V, for a judgment and/or order that the Transfers are each avoidable preferential transfers under applicable Canadian law;

(F)     On Count VI, for a judgment and/or order that Defendant SPG and each of them: (i) either turnover the Truck to Plaintiff plus pay for all decreases in value since Defendant acquired possession of the Truck or (ii) a monetary judgment for the value of the Truck at the time Defendant obtained possession of the Truck;

(G)     On Count VII, for a judgment and/or order that the Defendants and each of them are  jointly and severally liable for the Transfers;

(H)     On all Counts, money damages including pre-judgment and post-judgment interest, avoidance, disgorgement, set aside, and recovery of not less than USD $780,873 plus the value of the Truck when acquired from Debtor;

(I)     Fees and costs in favor of Plaintiff and against Defendants; and

(J)     Such other and further relief as the Court may deem just and proper.

Dated:  March 19, 2025

Respectfully submitted,

DENTONS US LLP


By:  _/S/ Jess R. Bressi_____
     JESS R. BRESSI

Attorneys for Plaintiff,

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CA 92660
(949) 241-8967

COMPLAINT

129012240

*In re:  Big Rig Trailers & Leasing, Inc.*
USBC Central District of California Case No. 6:24-15309

# **Exhibit 1**

Order Made After Application Amended And Restated Receivership Order August 19, 2024



SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

AUG 1 9 2024
ENTERED

No. S-244137
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN

### ROYAL BANK OF CANADA

PETITIONER

AND

### BIG RIG TRAILERS & LEASING INC., BIG RIG
### TIRES & SERVICES INC., and BIG RIG PARTZ INC.

RESPONDENTS

### ORDER MADE AFTER APPLICATION
### AMENDED AND RESTATED RECEIVERSHIP ORDER

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| | ) | |
| MR. JUSTICE MASUHARA | ) | MONDAY, AUGUST 19, 2024 |
| | ) | |

**ON THE APPLICATION** of Royal Bank of Canada ("**RBC**"), for an Order pursuant to Section 243(1) of the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "**BIA**"), and Section 39 of the *Law and Equity Act*, RSBC 1996 c 253, as amended (the "**LEA**"), appointing Grant Thornton Limited ("**GT**") as Receiver and Manager (in such capacity, the "**Receiver**") without security, of all of the assets, undertakings and property of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. (collectively, the "**Debtors**") acquired for, or used in relation to a business carried on by the Debtors, coming on for hearing this day at Vancouver, British Columbia.

**AND ON READING** the First Affidavit of Tro DerBedrossian sworn June 17, 2024, the Second Affidavit of Tro DerBedrossian sworn July 3, 2024, the Reports to the Court by GT, dated July 3, July 10 and August 16, 2024, and the consent of GT to act as the Receiver; **AND UPON** considering the Order granted by the Honourable Justice Masuhara on June 21, 2024 (the "**Interim Receivership Order**") appointing GT as interim receiver of the Debtors (in such capacity, the "**Interim Receiver**"); **AND ON HEARING** William E.J. Skelly, counsel for the Petitioner, RBC, Catherine Ewasiuk and Eamonn Watson, counsel for GT, and all other counsel as listed on Schedule "A" hereto;

- 2 -

**THIS COURT ORDERS AND DECLARES THAT:**

1.      This amended and restated receivership order amends and restates the order of this Court made in these proceedings on July 5, 2024.

**SERVICE**

2.      The time for service of the Notice of Hearing of Application for this Order and the Application Record is hereby abridged and validated so that this Application is properly returnable today and further service is hereby dispensed.

**APPOINTMENT OF RECEIVER AND CONCLUSION OF INTERIM RECEIVERSHIP**

3.      Pursuant to Section 243(1) of the BIA and Section 39 of the LEA, GT is appointed Receiver and Manager, without security, of all of the assets, undertakings and properties of the Debtors acquired for, or used in relation to a business carried on by the Debtors, including all proceeds (the "**Property**").

4.      Subject to paragraph 26 of this Order, the Interim Receivership Order is hereby terminated. Notwithstanding the termination of the Interim Receivership Order:

(a)      the Receiver is hereby authorized to perform such incidental duties as may be required to complete the administration of the Interim Receivership Order ("**Incidental Duties**") and shall be entitled to have its fees and disbursements, and the fees and disbursements of its counsel, for attending to such Incidental Duties approved and paid within these receivership proceedings without the necessity of a formal passing or assessment of their accounts; and

(b)      save and except that any and all acts, steps, agreements, and procedures validly taken, done, or entered into by the Interim Receiver during the pendency of the Interim Receivership Order shall remain valid, binding, and actionable within these Receivership proceedings (the "**Receivership**") and the Interim Receiver shall continue to have the benefit of the provisions of all Orders made in this Receivership, including all approvals, protections, and stays of proceedings in favour of the Interim Receiver in its capacity as Interim Receiver.

**RECEIVER'S POWERS**

5.      The Receiver is empowered and authorized, but not obligated, to act at once in respect of the Property and, without in any way limiting the generality of the foregoing, the Receiver is expressly empowered and authorized to do any of the following where the Receiver considers it necessary or desirable:

(a)      to take possession of and exercise control over the Property and any and all receipts and disbursements arising out of or from the Property;

(b)      to receive, preserve and protect the Property, or any part or parts thereof, including, but not limited to, changing locks and security codes, relocation of the Property, engaging independent security personnel, taking physical inventories and placing insurance coverage;

- 3 -

(c)    to manage, operate and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(d)    to compel 1000790856 Ontario Inc.. and any tenant or occupier of 1187 Welford Place, Woodstock, Ontario (the "**Woodstock Yard**") to grant the Receiver and its agents access to the Woodstock Yard for the purpose of assessing the vehicles and trailers located thereon to determine if any such vehicles or trailers form part of the Debtors' estate;

(e)    to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Receiver's powers and duties, including, without limitation, those conferred by this Order;

(f)    to purchase or lease such machinery, equipment, inventories, supplies, premises or other assets to continue the business of the Debtors or any part or parts thereof;

(g)    to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting these amounts, including, without limitation, enforcement of any security held by the Debtors;

(h)    to settle, extend or compromise any indebtedness owing to the Debtors;

(i)    to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to this Order;

(j)    to undertake environmental or workers' health and safety assessments of the Property and operations of the Debtors;

(k)    to initiate, manage and direct all legal proceedings now pending or hereafter pending (including appeals or applications for judicial review) in respect of the Debtors, the Property or the Receiver, including initiating, prosecuting, continuing, defending, settling or compromising the proceedings;

(l)    to market any or all of the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver considers appropriate;

(m)    to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business:

(i)    without the approval of this Court in respect of a single transaction for consideration up to $250,000.00 provided that the aggregate consideration for all such transactions does not exceed $2,000,000.00; and

- 4 -

(ii)     with the approval of this Court in respect of any transaction in which the individual or aggregate purchase price exceeds the limits set out in subparagraph (i) above,

and in each such case notice under Section 59(10) of the *Personal Property Security Act*, RSBC 1996, c 359 shall not be required;

(n)     to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers, free and clear of any liens or encumbrances;

(o)     to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver considers appropriate on all matters relating to the Property and the Receivership, and to share information, subject to confidentiality terms as the Receiver considers appropriate;

(p)     to register a copy of this Order and any other Orders in respect of the Property against title to any of the Property;

(q)     to apply for any permits, licences, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if considered necessary or appropriate by the Receiver, in the name of the Debtors;

(r)     to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limitation, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

(s)     to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have;

(t)     without limiting paragraph 5(r) hereof, take such steps and execute, issue and endorse such documents as may be necessary or desirable to cause the Debtors, or any of them, to make an assignment of all their property for the general benefit of their creditors pursuant to Section 49 of the BIA;

(u)     to commence one or more foreign legal proceedings to further the objectives of this proceeding, including by way of example and not limitation, ancillary receiverships in the United States of America, proceedings under the Model Law on Cross-Border Insolvency (including Chapter 15 of the United States Bankruptcy Code, Title 11, United States Code, 11 U.S.C. Section 1501 et seq), petitions under Title 11, United States Code, Chapters 7 and 11, as well as any other foreign legal proceedings wherever required to be filed by the Receiver in its judgment to pursue recovery of the Debtors' Property; and

(v)     to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations,

and in each case where the Receiver takes any such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined below), including the Debtors, and without interference from any other Person.

- 5 -

## DUTY TO PROVIDE ACCESS AND CO-OPERATION TO THE RECEIVER

6.  Each of (i) the Debtors; (ii) all of the Debtors' current and former directors, officers, employees, agents, accountants, legal counsel and shareholders, and all other persons acting on its instructions or behalf; and (iii) all other individuals, firms, corporations, governmental bodies or agencies, or other entities having notice of this Order, which shall include insurance agencies and insurance brokers (collectively, "**Persons**" and each a "**Person**") shall forthwith advise the Receiver of the existence of any Property in such Person's possession or control, shall grant immediate and continued access to the Property to the Receiver (including any Property located at the Woodstock Yard), and shall deliver all such Property (excluding Property subject to liens the validity of which is dependent on maintaining possession) to the Receiver upon the Receiver's request.

7.  All relevant Persons shall immediately provide the Receiver with access to the Debtors' ADP account number(s), ADP account login information, and ADP contact person(s), and provide access to and/or deliver to the Receiver the payroll records for all of the employees of the Debtors so the Receiver can issue Records of Employment to the employees of the Debtors.

8.  All Persons, other than governmental authorities, shall forthwith advise the Receiver of the existence of any books, documents, securities, contracts, orders, corporate and accounting records, and any other papers, records and information of any kind related to the business or affairs of the Debtors, and any computer programs, computer tapes, computer disks, or other data storage media containing any such information (collectively, the "**Records**") in that Person's possession or control. Upon request, governmental authorities shall advise the Receiver of the existence of any Records in that Person's possession or control.

9.  Upon request, all Persons shall provide to the Receiver or permit the Receiver to make, retain and take away copies of the Records and grant to the Receiver unfettered access to and use of accounting, computer, software and physical facilities, provided however that nothing in paragraphs 7, 8, or 9 of this Order shall require the delivery of Records, or the granting of access to Records, which may not be disclosed or provided to the Receiver due to solicitor client privilege or statutory provisions prohibiting such disclosure.

10. If any Records are stored or otherwise contained on a computer or other electronic system of information storage, whether by an independent service provider or otherwise, all Persons in possession or control of such Records shall forthwith give unfettered access to the Receiver for the purpose of allowing the Receiver to recover and fully copy all of the information contained therein whether by way of printing the information or making copies of computer disks or such other manner of retrieving and copying the information as the Receiver in its discretion deems expedient, and shall not alter, erase or destroy any Records without the prior written consent of the Receiver. Further, for the purposes of this paragraph, all Persons shall provide the Receiver with all such assistance in gaining immediate access to the information in the Records as the Receiver may require including, without limitation, providing the Receiver with instructions on the use of any computer or other system and providing the Receiver with any and all access codes, account names and account numbers that may be required to gain access to the information.

## NO PROCEEDINGS AGAINST THE RECEIVER

11.     No proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

## NO PROCEEDINGS AGAINST THE DEBTORS OR THE PROPERTY

12.     No Proceeding against or in respect of the Debtors or the Property shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Debtors or the Property are stayed and suspended pending further Order of this Court; provided, however, that nothing in this Order shall prevent any Person from commencing a Proceeding regarding a claim that might otherwise become barred by statute or an existing agreement if such Proceeding is not commenced before the expiration of the stay provided by this paragraph and provided that no further step shall be taken in respect of the Proceeding except for service of the initiating documentation on the Debtors and the Receiver.

## NO EXERCISE OF RIGHTS OR REMEDIES

13.     All rights and remedies (including, without limitation, set-off rights) against the Debtors, the Receiver, or affecting the Property, are stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that nothing in this Order shall (i) empower the Receiver or the Debtors to carry on any business which the Debtors is not lawfully entitled to carry on, (ii) affect the rights of any regulatory body as set forth in section 69.6(2) of the BIA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien. This stay and suspension shall not apply in respect of any "eligible financial contract" as defined in the BIA.

## NO INTERFERENCE WITH THE RECEIVER

14.     No Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, without written consent of the Receiver or leave of this Court. Nothing in this Order shall prohibit any party to an eligible financial contract from closing out and terminating such contract in accordance with its terms.

## CONTINUATION OF SERVICES

**15.**     All Persons having oral or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods and/or services, including without limitation, all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Debtors are restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Receiver, and the Receiver shall be entitled to the continued use of the Debtors' current telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver in accordance with normal payment practices of the Debtors or such other

practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court.

## RECEIVER TO HOLD FUNDS

16.    All funds, monies, cheques, instruments, and other forms of payments received or collected by the Receiver from and after the making of this Order from any source whatsoever including, without limitation, the sale of all or any of the Property and the collection of any accounts receivable, in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into one or more new accounts to be opened by the Receiver (the "**Post-Receivership Accounts**") and the monies standing to the credit of such Post-Receivership Accounts from time to time, net of any disbursements provided for herein, shall be held by the Receiver to be paid in accordance with the terms of this Order or any further order of this Court.

## EMPLOYEES

17.    Subject to the employees' right to terminate their employment, all employees of the Debtors shall remain the employees of the Debtors until such time as the Receiver, on the Debtors' behalf, may terminate the employment of such employees. The Receiver shall not be liable for any employee-related liabilities of the Debtors, including any successor employer liabilities as referred to in Section 14.06(1.2) of the BIA, other than amounts the Receiver may specifically agree in writing to pay or in respect of obligations imposed specifically on receivers by applicable legislation, including sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act*, SC 2005, c 47. The Receiver shall be liable for any employee-related liabilities, including wages, severance pay, termination pay, vacation pay, and pension or benefit amounts relating to any employees that the Receiver may hire in accordance with the terms and conditions of such employment by the Receiver.

## PERSONAL INFORMATION

18.    Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, SC 2000, c 5 or Section 18(1)(o) of the *Personal Information Protection Act*, SBC 2003, c 63, the Receiver may disclose personal information of identifiable individuals to prospective purchasers or bidders for the Property and to their advisors, but only to the extent desirable or required to negotiate and attempt to complete one or more sales of the Property (each, a "**Sale**"). Each prospective purchaser or bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Sale, and if it does not complete a Sale, shall return all such information to the Receiver, or in the alternative destroy all such information. The purchaser of any Property shall be entitled to continue to use the personal information provided to it, and related to the Property purchased, in a manner which is in all material respects identical to the prior use of such information by the Debtors, and shall return all other personal information to the Receiver, or ensure that all other personal information is destroyed.

## LIMITATION ON ENVIRONMENTAL LIABILITIES

19.    Nothing in this Order shall require the Receiver to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the

- 8 -

Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release, or deposit of a substance contrary to any federal, provincial or other law relating to the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination (collectively "**Environmental Legislation**"), provided however that nothing herein shall exempt the Receiver from any duty to report or make disclosure imposed by applicable Environmental Legislation.

20.   The Receiver shall not, as a result of this Order or anything done in pursuance of the Receiver's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless the Receiver is actually in possession.

21.   Notwithstanding anything in federal or provincial law, the Receiver is not personally liable in that position for any environmental condition that arises or environmental damage that occurred:

(a)   before the Receiver's appointment; or,

(b)   after the Receiver's appointment, unless it is established that the condition arose or the damage occurred as a result of the Receiver's gross negligence or wilful misconduct.

22.   Notwithstanding anything in federal or provincial law, but subject to paragraph 17 of this Order, where an order is made which has the effect of requiring the Receiver to remedy any environmental condition or environmental damage affecting the Property, if the Receiver complies with the BIA section 14.06(4), the Receiver is not personally liable for the failure to comply with the order and is not personally liable for any costs that are or would be incurred by any Person in carrying out the terms of the order.

**LIMITATION ON THE RECEIVER'S LIABILITY**

23.   The Receiver shall incur no liability or obligation as a result of its appointment or the carrying out the provisions of this Order, save and except:

(a)   any gross negligence or wilful misconduct on its part; or

(b)   amounts in respect of obligations imposed specifically on receivers by applicable legislation.

Nothing in this Order shall derogate from the protections afforded the Receiver by Section 14.06 of the BIA or by any other applicable legislation.

**RECEIVER'S ACCOUNTS**

24.   The Receiver and its legal counsel, if any, are granted a charge (the "**Receiver's Charge**") on the Property as security for the payment of their fees and disbursements, in each case at their standard rates, in respect of these proceedings, whether incurred before or after the making of this Order. The Receiver's Charge shall form a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, with the exception that the Receiver's Charge:

(a)    shall rank *pari passu* with the Interim Receiver's Charge granted in the Interim Receivership Order; and

(b)    shall be subordinate to:

(i)    any valid and perfected security interest in the Property which rank ahead of RBC's interest therein (the "**Prior-Ranking Charges**"); and

(ii)    the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

25.    The Receiver and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Receiver and its legal counsel are referred to a judge of the Supreme Court of British Columbia and may be heard on a summary basis.

26.    Prior to the passing of its accounts, the Receiver shall be at liberty from time to time to apply reasonable amounts, out of the monies in its hands, against its fees and disbursements, including legal fees and disbursements, incurred at the standard rates and charges of the Receiver or its counsel, and such amounts shall constitute advances against its remuneration and disbursements when and as approved by this Court.

**FUNDING OF THE RECEIVERSHIP**

27.    The Receiver is authorized and empowered to borrow by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed $750,000.00 (or such greater amount as this Court may by further Order authorize) at any time, at such rate or rates of interest as the Receiver deems advisable for such period or periods of time as it may arrange, for the purpose of:

(a)    funding the exercise of the powers and duties conferred upon the Receiver by this Order, including interim expenditures; and

(b)    paying amounts owing to the Interim Receiver which are secured by the Interim Receiver's Charge created by paragraph 21 of the Interim Receivership Order and/or the Interim Receiver's Borrowing Charge created by paragraph 24 of the Interim Receivership Order. Notwithstanding the termination of the Interim Receivership Order, the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge shall continue and shall be discharged upon the Interim Receiver filing with the Clerk of the Court a Certificate certifying that all amounts owing pursuant to the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge have been paid in full, thereupon the Interim Receiver's Charge and the Interim Receiver's Borrowings Charge, shall be automatically vacated, of no further force and effect, and shall no longer form a charge on the Property.

The whole of the Property shall be and is charged by way of a fixed and specific charge (the "**Receiver's Borrowings Charge**") as security for the payment of the monies borrowed, together with interest and charges thereon, in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, but subordinate in

priority to (i) the Prior-Ranking Charges, (ii) the Interim Receiver's Charge, and (iii) the charges, if any, created pursuant to Sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

28.  Neither the Receiver's Borrowings Charge nor any other security granted by the Receiver in connection with its borrowings under this Order shall be enforced without leave of this Court.

29.  The Receiver is authorized to issue certificates substantially in the form annexed as Schedule "B" hereto (the "**Receiver's Certificates**") for any amount borrowed by it pursuant to this Order.

30.  The monies from time to time borrowed by the Receiver pursuant to this Order or any further order of this Court and any and all Receiver's Certificates evidencing the same or any part thereof shall rank on a *pari passu* basis, unless otherwise agreed to by the holders of any prior issued Receiver's Certificates.

## ALLOCATION

31.  Any interested party may apply to this Court on notice to any other party likely to be affected for an order allocating the Receiver's Charge and Receiver's Borrowings Charge amongst the Property.

## SERVICE AND NOTICE OF MATERIALS

32.  The Receiver shall establish and maintain a website in respect of these proceedings at: https://www.grantthornton.ca/service/advisory/creditor-updates/ (the "**Website**") and shall post there as soon as practicable:

   (a)  all materials prescribed by statute or regulation to be made publicly available, including pursuant to Rule 10-2 of the *Supreme Court Civil Rules*, BC Reg 168/2009; and,

   (b)  all applications, reports, affidavits, orders and other materials filed in these proceedings by or on behalf of the Receiver, except such materials as are confidential and the subject of a sealing order or pending application for a sealing order.

33.  Any Person who is served with a copy of this Order and that wishes to be served with any future application or other materials in these proceedings must provide to counsel for each of the Receiver and the Petitioner a demand for notice in the form attached as Schedule "C" (the "**Demand for Notice**"). The Receiver and the Petitioner need only provide further notice in respect of these proceedings to Persons that have delivered a properly completed Demand for Notice. The failure of any Person to provide a properly completed Demand for Notice releases the Receiver and the Petitioner from any requirement to provide further notice in respect of these proceedings until such Person delivers a properly completed Demand for Notice.

34.  The Receiver shall maintain a service list identifying all parties that have delivered a properly completed Demand for Notice (the "**Service List**"). The Receiver shall post and maintain an up-to-date form of the Service List on the Website.

35.  Any interested party, including the Receiver, may serve any court materials in these proceedings by facsimile or by emailing a PDF or other electronic copy of such materials to the numbers or addresses, as applicable, set out on the Service List. Any interested party,

- 11 -

including the Receiver, may serve any court materials in these proceedings by mail to any party on the Service List that has not provided a facsimile number or email address, and materials delivered by mail shall be deemed received five (5) days after mailing.

36.    Notwithstanding paragraph 32 of this Order, service of the Application and any affidavits filed in support shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, RSC 1985, c C-50 and its regulations for the Federal Crown and the *Crown Proceedings Act*, RSBC 1996, c 89 in respect of the British Columbia Crown.

37.    The Receiver and its counsel are authorised to serve or distribute this Order, any other orders and any other materials as may be reasonably required in these proceedings, including any notices or other correspondence, by forwarding copies by facsimile or by email to the Debtors' creditors or other interested parties and their advisors.  For greater certainty, any such distribution or service shall be deemed to be in satisfaction of any legal or juridical obligation and notice requirements within the meaning of clause 3(c) of the *Electronic Commerce Protection Regulations*.

**GENERAL**

38.    Any interested party may apply to this Court to vary or amend this Order on not less than seven (7) clear business days' notice to the Service List and to any other party who may be affected by the variation or amendment, or upon such other notice, if any, as this Court may order.

39.    The Receiver may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

40.    Nothing in this Order shall prevent the Receiver from acting as a trustee in bankruptcy of the Debtors.

41.    This Court requests the aid, recognition and assistance of any court, tribunal, regulatory or administrative body having jurisdiction, wherever located, including without limitation in Canada, the State of California, and all other States in the United States of America, to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order. All such courts, tribunals and regulatory and administrative bodies are respectfully requested to make such orders and to provide such assistance to the Receiver, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Receiver and its agents in carrying out the terms of this Order.

42.    The Receiver is authorized and empowered to apply to any court, tribunal or regulatory or administrative body, wherever located, for recognition of this Order and for assistance in carrying out the terms of this Order and the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

43.    The Petitioner shall have its costs of this motion, up to and including entry and service of this Order, on a full indemnity basis to be paid by the Receiver from the Debtors' estate with such priority and at such time and amount as this Court may determine.

- 12 -

44.     Endorsement of this Order by counsel appearing on this application other than the Petitioner is dispensed with.

THE FOLLOWING PARTIES APPROVE OF THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

APPROVED BY:

_____

William E.J. Skelly, lawyer for the Petitioner,
Royal Bank of Canada

_____ J.

BY THE COURT

_____

DISTRICT REGISTRAR



## SCHEDULE "A"

(List of Counsel)

| Name of Counsel | Party Represented |
|---|---|
| William E.J. Skelly<br>Jess R. Reid | The Petitioner, Royal Bank of Canada |
| Catherine Ewasiak<br>Eamonn Watson | The Proposed Receiver, Grant Thornton Limited |
| Brian Hicks | Mitsubishi HC Capital Canada Inc. |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

- 14 -

## SCHEDULE "B"

## RECEIVER CERTIFICATE

CERTIFICATE NO. _____

AMOUNT          $ _____

1.  THIS IS TO CERTIFY that Grant Thornton Limited, the Receiver and Manager (the "**Receiver**") of all of the assets, undertakings and properties of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc. acquired for, or used in relation to a business carried on by the Debtors, including all proceeds thereof (collectively, the "**Property**") appointed by Order of the Supreme Court of British Columbia and/or the Supreme Court of British Columbia (In Bankruptcy and Insolvency) (the "**Court**") dated the 5th day of July, 2024 (the "**Order**") made in SCBC Action No. _____ has received as such Receiver from the holder of this certificate (the "**Lender**") the principal sum of $_____, being part of the total principal sum of $_____ which the Receiver is authorized to borrow under and pursuant to the Order.

2.  The principal sum evidenced by this certificate is payable on demand by the Lender with interest thereon calculated and compounded monthly not in advance on the _____ day of each month after the date hereof at a notional rate per annum equal to the rate of _____ per cent above the prime commercial lending rate of _____ from time to time.

3.  Such principal sum with interest thereon is, by the terms of the Order, together with the principal sums and interest thereon of all other certificates issued by the Receiver pursuant to the Order or to any further order of the Court, a charge upon the whole of the Property, in priority to the security interests of any other person, but subject to (i) any valid and perfected security interest in the Property which rank ahead of RBC's interest therein, (ii) the priority of the charges set out in the Order, and (iii) in the *Bankruptcy and Insolvency Act*, and the right of the Receiver to indemnify itself out of the Property in respect of its remuneration and expenses.

4.  All sums payable in respect of principal and interest under this certificate are payable at the main office of the Lender at _____.

5.  Until all liability in respect of this certificate has been terminated, no certificates creating charges ranking or purporting to rank in priority to this certificate shall be issued by the Receiver to any person other than the holder of this certificate without the prior written consent of the holder of this certificate.

6.  The charge securing this certificate shall operate to permit the Receiver to deal with the Property as authorized by the Order and as authorized by any further or other order of the Court.

80852268

- 15 -

7.    The Receiver does not undertake, and it is not under any personal liability, to pay any sum under this Certificate in respect of which it may issue certificates under the terms of the Order.

DATED the _____ day of _____, 2024.

<div style="margin-left:50%">

Grant Thornton Limited, solely in its capacity as Receiver and Manager of the Property, and not in its personal capacity

Per:
Name:
Title:

</div>

- 16 -

## SCHEDULE "C"

### Demand for Notice

TO:     **Royal Bank of Canada**
c/o MLT Aikins LLP
Attention: William E.J. Skelly
Email: wskelly@mltaikins.com

AND TO:    **Grant Thornton Limited**
c/o Dentons Canada LLP
Attention: Jordan Schultz
Email: jordan.schultz@dentons.com

Re:     **In the matter of the Receivership of Big Rig Trailers & Leasing Inc., Big Rig Tires & Services Inc., and Big Rig Partz Inc.**

I hereby request that notice of all further proceedings in the above Receivership be sent to me in the following manner:

1. By email, at the following address (or addresses):

   _____

   OR

2. By facsimile, at the following facsimile number (or numbers):

   _____

   OR

3. By mail, at the following address:

   _____


Name of Creditor: _____

Name of Counsel (if any): _____

Creditor's Contact Address: _____

_____

_____

Creditor's Contact Phone Number: _____

No. S-244137
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN:

**ROYAL BANK OF CANADA**

PETITIONER

AND:

**BIG RIG TRAILERS & LEASING INC., BIG RIG
TIRES & SERVICES INC., and BIG RIG PARTZ INC.**

RESPONDENTS

_____

**AMENDED AND RESTATED
RECEIVERSHIP ORDER**

_____

Dentons Canada LLP
20th Floor – 250 Howe Street
Vancouver. BC  V6C 3R8
Attention:  Jordan Schultz

80852268

*In re:  Big Rig Trailers & Leasing, Inc.*
USBC Central District of California Case No. 6:24-15309

## **<u>Exhibit 2</u>**

Order Granting Motion Of The Foreign Representative For Chapter 15 Recognition October 17, 2024

JESS R. BRESSI (SBN 110264)
DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
Tel: (949) 241-8967
Email: jess.bressi@dentons.com

LYNN P. HARRISON III (Admitted Pro Hac Vice)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 768-6700
Email: lynn.harrisoniii@dentons.com

Counsel for Foreign Representative

**FILED & ENTERED**

**OCT 17 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch      DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No. 6:24-bk-15309-WJ |
| BIG RIG TRAILERS & LEASING INC., | CHAPTER 15 |
| Debtor in Foreign Proceeding. | (Voluntary Petition Filed September 6, 2024) |
| | **ORDER GRANTING MOTION OF THE FOREIGN REPRESENTATIVE FOR CHAPTER 15 RECOGNITION** |
| | Hearing: |
| | Date:      October 17, 2024 |
| | Time:      9:00 a.m. |
| | Place:     Courtroom 304 |
| |                 3420 Twelfth Street |
| |                 Riverside, CA 92501-3819 |

On October 17, 2024 at 9:00 a.m., the Court held a hearing regarding the motion of the foreign representative for chapter 15 recognition filed by GTL ("Foreign Representative"), as the foreign representative for the debtor, Big Rig Trailers & Leasing, Inc. ("Debtor"), in this chapter 15 proceeding which is (1) registered under the Canada Business Corporation Act, with the last four digits of its business registration number 7267, with offices at 2105 Carpenter Street, Abbotsford, British Columbia, V2T 6L9, Canada and (2) the subject of the proceeding ("Canadian Proceeding") currently pending before the Supreme Court of British Columbia, initiated under the Canadian Bankruptcy and Insolvency Act, RSC 1985, c B-3 as amended.  All appearances were noted on the record.  No one opposed the motion.

Good cause appearing, the Court hereby ORDERS:

1. The motion is granted as follows.

2. The Canadian Proceeding is hereby recognized as a foreign main proceeding by 11 U.S.C. § 1517 and given full force and effect.

3. All relief authorized by 11 U.S.C. § 1520 shall apply throughout the duration of this proceeding or until otherwise ordered by this Court, including, without limitation, the automatic stay under 11 U.S.C. § 362.

4. Pursuant to 11 U.S.C. § 1521(a)(3), the right to transfer, encumber, or otherwise dispose of any assets of the Debtor is hereby suspended.

5. Pursuant to 11 U.S.C. § 1521(b)), the Foreign Representative is entrusted with the right to administer or distribute all or part of the Debtor's assets located in the United States.

6. Pursuant to 11 U.S.C. § 1521(a)(6), the relief granted pursuant to the provisional relief order shall continue in full force and effect until further order of this Court.

7. Notice of this order shall be promptly served by first class mail.

8. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary including, but not limited to Bankruptcy Rules 7062 and 1018, (a) this order shall be effective immediately and enforceable upon its entry and (b) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this order.

9.     This Court retains jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the motion, the chapter 15 petition, or the implementation of this order.

IT IS SO ORDERED.

### 

Date: October 17, 2024

Wayne Johnson
United States Bankruptcy Judge